**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **JOANNA M. COOPER, Administrator for the ESTATE OF JOHN RAMEY POSEY, Deceased,** )<br>)<br>)<br>)<br>**Plaintiff,** )<br>)<br>**v.** )<br>)<br>**OLD DOMINION FREIGHT LINE, a Corporation, VIRGEL SMITH, an individual, and PROTECTIVE INSURANCE COMPANY, a foreign insurance company,** )<br>)<br>)<br>)<br>)<br>**Defendants.** )<br>_____) | **Case No. 09-cv-2441-JAR/GLR** |

## MEMORANDUM AND ORDER

This matter comes before the Court on Old Dominion Freight Line's ("Old Dominion")

and Virgel Smith's ("Smith")[1] Motion to Dismiss and Alternative Motion for Certification to the

Kansas Supreme Court (Doc. 6) and Protective Insurance Company's ("Protective") Motion to

Dismiss and Alternative Motion for Certification to the Kansas Supreme Court (Doc. 10). For

the reasons explained in detail below, the Court denies defendants' motions for certification to

the Kansas Supreme Court, and denies defendants' motions to dismiss.

## I.    Standard of Review

Throughout defendants' motions to dismiss, they have cited to Federal Rules of Civil

Procedure 12(b)(3) and 12(b)(6). They did not, however, make any arguments for improper

venue under Rule 12(b)(3), but instead, set forth and applied Rule 12(b)(6) standards, arguing

that plaintiff has failed to state a claim upon which relief may be granted. The Court understands

---

[1]The parties spell this defendant's name differently. While plaintiff spells his name "Virgel Smith," defendant spells it "Virgil Smith." The Court will use the spelling provided in the case caption.

their argument as one for dismissal under Rule 12(b)(6). Both plaintiff and Protective have attached exhibits to their briefs.

Generally, when "matters outside the pleadings are presented to and not excluded by the court [in deciding a motion under Rule 12(b)(6)], the motion must be treated as one for summary judgment under Rule 56."[2] There is an exception to this rule, however. The trial court may take judicial notice of publicly-available court documents and matters of public record without converting a motion to dismiss for failure to state a claim into a motion for summary judgment, so long as those facts are not in dispute.[3] "This allows the court to take judicial notice of its own files and records, as well as facts which are a matter of public record. [T]he documents may only be considered to show their contents, not to prove the truth of the matters asserted therein."[4] A court may even treat documents from prior state court adjudications as public records.[5] Whether to take judicial notice of a fact is within the sound discretion of the court.[6]

Here, the parties have attached exhibits to their briefs setting forth the procedural history of this case—facts that fall outside of plaintiff's Complaint. However, the material facts surrounding defendants' motions to dismiss are matters of public record from the prior Oklahoma action, wherein all parties were previously involved. The filings from the prior action

---

[2]Fed. R. Civ. P. 12(d).

[3]*See Pace v. Swerdlow*, 519 F.3d 1067, 1072–73 (10th Cir. 2008); *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006); *Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1278 n. 1 (10th Cir. 2004); *Patton v. Jones*, Case No. CIV-06-0591-F, 2006 WL 2246441, at *1 n.1 (W.D. Okla. Aug. 4, 2006) (noting that a federal court may even take judicial notice of materials from proceedings before the Oklahoma Court of Criminal Appeals).

[4]*Tal*, 453 F.3d at 1264 n. 24 (internal citations and alternations omitted).

[5]*See Boateng v. Interamerican Univ., Inc.*, 210 F.3d 56, 60 (1st Cir. 2000) (citing *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994)).

[6]*Klein v. Zavaras*, 80 F.3d 432, 435 n.5 (10th Cir. 1996).

were available to all parties in the present action, and the facts from that action are not presently in dispute.

Thus, the Court considers defendants' motions to dismiss under Rule 12(b)(6) and will consider the attached exhibits only as they relate to the procedural history of this case, that is, the timing and nature of the filings in the previous case. The Court will not consider plaintiff's Exhibit 4, attached to Document 13, because plaintiff has offered it for the truth of the matter asserted therein.[7] The Court will consider the pleadings from the Oklahoma action to assess the claims asserted.

In ruling on a Rule 12(b)(6) motion to dismiss, the court will draw all reasonable inferences in favor of the plaintiff.[8] Under Fed. R. Civ. P. 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint must give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.[9] To survive a motion to dismiss, a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face."[10]

The plausibility standard enunciated in *Bell Atlantic Corp. v. Twombly* seeks a middle

---

[7]Exhibit 4 is a copy of defendants' "Unopposed Motion for Stay of Order" filed in the Oklahoma action. Plaintiff presently uses the motion to argue that defendants unequivocally admitted that Protective received service of process and Old Dominion and Smith waived service of process in the prior action. Whether Protective received service is in dispute and not supported by the public record in the prior case. Thus, the Court does not consider Exhibit 4 in ruling on defendants' motions.

[8]*Dias v. City & County of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009).

[9]*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The United States Supreme Court explained in *Bell Atlantic Corp. v. Twombly*: "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." 550 U.S. 544, 555 n.3 (2007).

[10]*Twombly*, 550 U.S. at 555, 570.

ground between heightened fact pleading and "allowing complaints that are no more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,' which the Court stated 'will not do.'"[11]  The Supreme Court recently explained the analysis as a two-step process. For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but] we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[12]  Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[13]  Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[14]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[15]

## II.    Facts

### A.    Procedural History

The chronology of events provided by the parties is largely undisputed.  On January 4, 2007, a collision occurred between a tractor-trailer driven by Virgel Smith and a vehicle operated by Marilyn Short in Crawford County, Kansas.  Plaintiff alleges that Smith was, at the time, performing duties as an employee of Old Dominion Freight Line.  Short's rear passenger, John Posey, suffered injuries in the collision and subsequently died.

---

[11]*Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555).

[12]*Ashcroft v. Iqbal*, – U.S. –, 129 S. Ct. 1937, 1949–50 (2009).

[13]*Id.* at 1950.

[14]*Id.*

[15]*Id.* at 1949.

Plaintiff Joanna Cooper, acting as administrator for the Estate of John Posey, filed the present action in the Northern District Court of Oklahoma on December 30, 2008, alleging that Smith, Old Dominion, and "Progressive Insurance Company," the liability insurer for Dominion, were liable for negligence. Plaintiff attempted to serve Old Dominion through certified mail to the Corporation Company in Oklahoma. On January 7, 2009, plaintiff filed an Amended Complaint against these defendants in the Northern District of Oklahoma, substituting "Protective Insurance Company" for "Progressive Insurance Company." On January 12, 2009, plaintiff attempted service of process on Protective by mailing a summons and a copy of the Amended Complaint to the Oklahoma Insurance Department. It is disputed whether plaintiff obtained formal service of process on Protective.

On January 27, 2009, Old Dominion and Smith signed a waiver of service form per Federal Rule of Civil Procedure 4, which was entered on February 2, 2009. On February 2, 2009, defense counsel filed an "Appearance" with the Oklahoma federal court on behalf of all three defendants. That same day, Old Dominion, Smith and Protective filed motions to dismiss in the Northern District of Oklahoma based on lack of personal jurisdiction, improper venue, and failure to state a claim.

On March 2, 2009, before the court ruled on the pending motions, plaintiff voluntarily dismissed the action in the Northern District of Oklahoma. On August 21, 2009, plaintiff filed the present action in the District of Kansas. Defense counsel signed waiver of service forms for Old Dominion, Smith, and Protective, and they were entered on November 25, 2009.[16] Counsel for Old Dominion and Smith entered an appearance on November 2, 2009, and filed a motion to

---

[16](Docs. 14 and 15.)

dismiss on behalf of Old Dominion and Smith the same day.  On November 3, 2009, two other attorneys filed motions to appear pro hac vice on behalf of Old Dominion and Smith.  Protective filed a motion to dismiss on November 23, 2009.

**B.      Allegations of Direct Action Claim**

Protective's argument for dismissal of plaintiff's direct action claim requires a comparison of pleadings from the first and second action, and because these documents are part of the public record in the prior case, the Court will consider Protective's motion to dismiss plaintiff's direct action claim under Rule 12(b)(6) standards as well.  Both parties have provided this Court with a copy of the Amended Complaint from the Oklahoma action.

Joanna Cooper brought the Oklahoma action as administrator for the Estate of John Ramey Posey, against defendants Old Dominion, Smith, and Protective.  The Amended Complaint sets forth the same facts regarding the collision and the injuries sustained by Posey, such as that Smith was acting within the scope of his employment for Old Dominion at the time of the collision.  The Amended Complaint also sets forth that Protective is a foreign corporation and the liability insurance carrier for Old Dominion Freight; and the Amended Complaint states that Protective "is a proper party to this action."

In the Kansas action, Cooper, as administrator for the Estate of John Ramey Posey, brought the same claims action against the same three defendants, Old Dominion, Smith, and Protective.  And, in the Kansas Complaint, plaintiff sets forth additional facts relating to Protective.  Defendant  Protective is a duly organized and existing Indiana corporation engaged in the business of issuing motor vehicle insurance policies to the public, including motor carriers.  On or before January 4, 2007, Protective issued to Old Dominion a policy of motor vehicle

insurance. The policy was in full force and effect on January 4, 2007. At all times material to the Complaint, Old Dominion and Smith were insured under the policy. Prior to January 4, the motor vehicle insurance policy was filed with and approved by the Kansas Corporation Commission under K.S.A. § 66-1,128.

## III.   Discussion

All three defendants argue that plaintiff's claims are barred by the Kansas statute of limitations. Alternatively, defendants ask the Court to certify these issues to the Kansas Supreme Court. Defendant Protective independently argues that plaintiff's direct action claim against Protective under K.S.A. § 66-1,128 should be dismissed because it was not previously asserted in the Oklahoma action and therefore should not benefit from the Kansas savings statute. The Court will address these arguments in turn.

### A.      Statute of Limitations

When the underlying cause of action is based on state law and federal jurisdiction is based on diversity of citizenship, state law provides the appropriate period of limitations and determines whether service of process must be effected within that period.[17] If state substantive law holds that service is part of the state's statute of limitations, in a diversity suit the state's service rules are "considered part and parcel of the statute of limitations."[18] Therefore, a federal court with diversity jurisdiction must look to state law for the applicable statute of limitations.[19]

---

[17]*Walker v. Armco Steel Corp.*, 446 U.S. 740, 752–53 (1980); *Wheaton v. Ahrens*, 983 F. Supp. 970, 973 (D. Kan. 1997).

[18]*Walker*, 446 U.S. at 752.

[19]*Burnham v. Humphrey Hospitality Reit Trust, Inc.*, 403 F.3d 709, 713 (10th Cir. 2005) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)); *Burnett v. Perry Mfg., Inc.*, No. 92-4187-DES, 1994 WL 116323, at *2 (D. Kan. Mar. 15, 1994).

Moreover, "state law determines when plaintiff commenced the suit for purposes of applying the statute of limitations."[20]

The parties agree that the relevant statute of limitations is two years under K.S.A. § 60-513, for actions "for injury to the rights of another not arising on contract . . . ."  However, the parties dispute whether the Kansas savings statute applies in this case.  Defendants make two arguments in support of dismissal under the statute of limitations: (1) plaintiff's Oklahoma action was not properly "commenced" before the two-year statute of limitations expired, and (2) the Kansas savings statute does not apply to an action originally filed in a state other than Kansas.

If the action was properly commenced, but was dismissed other than on the merits and the statute of limitations has already expired, then the Kansas savings statute "saves" the suit and allows it to be refiled.[21]  The Kansas savings statute provides:

> If any action be commenced within due time, and the plaintiff fail in such action otherwise than upon the merits, and the time limited for the same shall have expired, the plaintiff . . . may commence a new action within six (6) months after such failure.[22]

For the statute to apply, the Kansas Court of Appeals has explained that the following elements must be present:

> (1) the first suit must have been filed before the limitations period expired (thus "commenced within due time"), (2) the first suit must have been dismissed for reasons other than the merits of the claim, (3) the second suit must have been filed within 6 months of dismissal of the first suit, and (4) but for the savings statute, the

---

[20]*Burnett*, 1994 WL 116323, at *2.

[21]*Campbell v. Hubbard*, 201 P.3d 702, 703 (Kan. Ct. App. 2008).

[22]K.S.A. § 60-518.

limitations period must have expired when the second suit was filed.[23]

To determine whether the savings statute offers plaintiff an additional six months, the court must first determine whether the original action was "commenced within due time."[24]  The parties dispute the first element.  Defendants argue that Kansas law should apply to determine whether the first action was properly "commenced."  Plaintiff responds that the law of the forum where the first action was filed should apply to determine whether the action was properly "commenced" for purposes of the Kansas savings statute.

Under Kansas law, an action is "commenced" for purposes of the statute of limitations on the date of the filing of the petition, so long as service is effected within 90 days of the filing.[25]  If service is not effected within that 90-day period, the action is deemed to have "commenced" upon the date of service.[26]  By comparison, under Oklahoma law, an action is "commenced" at the time a petition is filed with the court.[27]  In determining whether the original action was properly "commenced" for purpose of the savings statute, the Kansas Court of Appeals has explained that the forum court must look to the law of the state where the original action was

---

[23]*Campbell*, 201 P.3d at 703–04.

[24]*Id.* at 704.

[25]*Witherspoon v. Roadway Express, Inc.*, 782 F. Supp. 567, 572–73 (D. Kan. 1992) (citing K.S.A. § 60-203).

[26]K.S.A. § 60-203.

[27]12 Okla. Stat. Ann. tit. 12, § 2003; *see also* Committee Comment to Section 2003 ("Section 2003 changes Oklahoma law and adds needed certainty to making the date of filing of the petition the date of commencement of the action for all purposes, including application of the statute of limitations."); *Stone v. Estate of Sigman*, 970 P.2d 1185, 1188 (Okla. Civ. App. 1998).

filed, rather than to the law of state where the second action was filed.[28]

Defendants argue that the Kansas savings statute should not be used to rescue claims originally filed in another state. Defendants direct the Court to *Jackson v. Prairie Oil & Gas Co.*,[29] a Kansas Supreme Court case decided in 1924. In *Jackson*, the appellee argued that the Kansas savings statute should not apply "when the former action is brought in another state."[30] The Supreme Court noted a single case supporting this position, but, having already determined the savings statute did not apply on other grounds, the Court found it unnecessary to consider the merits of appellee's alternative argument.[31] Since 1924, "both circuit and state courts have split on the issue of whether savings statutes apply to suits originally filed in sister states."[32] The Tenth Circuit addressed the question directly in *Prince v. Leesona Corp., Inc.*,[33] and decided that Kansas courts would apply the savings statute to suits originally filed in sister states.[34] The Kansas Court of Appeals subsequently held likewise.[35]

---

[28]*Chatterton v. Roberts*, 228 P.3d 441 (Table), 2010 WL 1462741, at *2 (Kan. Ct. App. Apr. 8, 2010). The Court notes that an unpublished opinion of the court of appeals does not generally have precedential value in Kansas courts. *See Sports Unlimited, Inc. v. Lakford Enters., Inc.*, 275 F.3d 996, 1001 & n.4 (10th Cir. 2002) (citing Rule 7.04 of the Supreme Court of Kansas). The reasoning in *Chatterton* relies on the holding in *Campbell* and the Court finds it persuasive.

[29]222 P. 1114 (Kan. 1924).

[30]*Id.* at 1116.

[31]*Id.* ("in view of the conclusion already reached, it is not necessary to pass upon it"); *see also Goldsmith v. Learjet, Inc.*, 917 P.2d 810, 816–17 (Kan. 1996) (clarifying that, although litigants have cited *Jackson* for the proposition that the Kansas savings statute does not apply to actions originally filed in other states, *Jackson* did not reach the question).

[32]*Prince v. Leesona Corp., Inc.*, 720 F.2d 1166, 1168–69 (10th Cir. 1983).

[33]*Id.*

[34]*Id.*

[35]*See Cambpell v. Hubbard*, 201 P.3d 702, 706 (Kan. Ct. App. 2008); *Chatterton v. Roberts*, 228 P.3d 441 (Table), 2010 WL 1462741, at *2 (Kan. Ct. App. Apr. 8, 2010).

Defendants argue there are strong policy justifications for ignoring this precedent, but the Court finds their arguments unpersuasive. As the Tenth Circuit explained in *Prince v. Leesona Corp., Inc.*,[36] the justification for extending the Kansas savings statute to cases originally filed in other states is that most states now have some form of "savings statute"; to dismiss a case simply because it was originally filed elsewhere would prevent a forum state from protecting its citizens from discrimination in other states.[37] Furthermore, the Court of Appeals explained why Kansas applies its own savings statute, but incorporates the definition of "commencement" from the state of the original action:

> First, . . . In our mobile society, the possibility that a suit might be filed in one state, dismissed, and refiled in another is not so removed that no one has thought of it. . . . Yet the legislature has not explicitly limited the application of the savings statute to cases in which service of process was obtained within 90 days.
>
> Second, such a reading would be procedurally unworkable. While the first suit is pending, it may be difficult or impossible to determine in a case with multiple defendants from different states — and causes of action that may have arisen in different states — which state's law will ultimately determine when the action was commenced. . . . If a new and different rule would apply in each of the other 50 states when a suit is dismissed in one state and refiled elsewhere, uniform and predictable outcomes would be unattainable. And neither a policy reason nor a legislative directive suggests to do so.
>
> Third, when choosing which state's law to apply in a given case, the law of the forum is usually applied on procedural issues. . . . Thus, a person who filed a suit in Arizona would expect that Arizona law should be applied to procedural issues such as how

---

[36]720 F.2d 1166 (10th Cir. 1983).

[37]720 F.2d at 1169.

and when to serve the suit on the defendants.[38]

Although defendants have raised cogent arguments for the application of Kansas's service rules whenever the substantive claim arises under Kansas law regardless of where the action is originally filed, this Court is guided by Kansas precedent on the savings statute.[39] Based on this precedent, therefore, this Court applies the Kansas savings statute to plaintiff's action and, in so doing, incorporates Oklahoma's definition of "commencement" to determine whether the original action was "commenced within due time."[40]

Here, pursuant to Oklahoma law, plaintiff's original action in Oklahoma was "commenced" at the time the suit was filed on December 30, 2008. Since plaintiff's injury occurred on January 4, 2007, the Oklahoma action was brought within the two-year limitations period for negligence claims. Because the first suit was properly commenced, voluntarily

---

[38]*Cambpell*, 201 P.3d at 705–06; *see Chatterton*, 2010 WL 1462741, at *2 (holding "[w]e look to the law of the state where the first action was filed for the limited purpose of determining 'commencement,' but it is the Kansas savings statute that must be applied following that determination."); *see also West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 236–37 (1940) (explaining the authority of state courts on matters of state law).

[39]*See generally Cambpell*, 201 P.3d 702; *Chatterton*, 2010 WL 1462741. The United States Supreme Court has explained the authority of state courts on matters of state law:

> There are many rules of decision commonly accepted and acted upon by the bar and inferior courts which are nevertheless laws of the state although the highest court of the state has never passed upon them. In those circumstances a federal court is not free to reject the state rule merely because it has not received the sanction of the highest state court, even though it thinks the rule is unsound in principle or that another is preferable. State law is to be applied in the federal as well as the state courts[,] and it is the duty of the former in every case to ascertain from all the available data what the state law is and apply it rather than to prescribe a different rule, however superior it may appear from the viewpoint of "general law" and however much the state rule may have departed from prior decisions of the federal courts.

*West*, 311 U.S. at 236–37 (1940); *see also Sports Unlimited, Inc. v. Lankford Enters., Inc.*, 275 F.3d 996, 1000–1001 (10th Cir. 2002) (quoting *West*, 311 U.S. at 236–37).

[40]K.S.A. § 60-518.

dismissed "otherwise than upon the merits," and refiled within six months thereafter, the Kansas savings statute applies to "save" the action. Defendants' motion to dismiss is denied on this basis.

Even if the Court applies Kansas law to the Oklahoma action as defendants suggest, the Court finds plaintiff's Oklahoma action was properly "commenced" for purposes of the statute of limitations. Plaintiff argues that, even if Oklahoma law did not apply, her first action was properly "commenced" pursuant to Kansas law, § 60-203, warranting the protection of the Kansas savings statute. She argues that "commencement" of the action was effected in conformity with Kansas law (1) when defendants signed and plaintiff filed a waiver of service form pursuant to Federal Rule of Civil Procedure 4, or (2) when defense counsel entered an appearance on behalf of all defendants.

Defendants argue that service of process was ineffective and did not commence the action in Oklahoma. Old Dominion claims it was not properly served with a complaint. Protective argues plaintiff's service upon it was ineffective because Kansas law requires that "service upon a foreign corporation, if not made directly upon the corporation's officers, must be made either upon the Kansas Secretary of State or upon a duly appointed agent who is a Kansas resident,"[41] or by service of process upon the Kansas Commission of Insurance.[42]

Under K.S.A. § 60-203(a), an action is "commenced" for purposes of the statute of limitations on the date of the filing of the petition, so long as service is effected within 90 days

---

[41](Doc. 10 at 9) (citing K.S.A. §§ 60-304 and 60-306).

[42]*Id.* (citing K.S.A. § 40-218).

after the filing.[43]  If service is not effected within that 90-day period, the action is deemed to

have "commenced" on the day service was obtained.[44]  K.S.A. § 60-203(c) alternatively provides

that "[t]he filing of an entry of appearance shall have the same effect as service."[45]  The Tenth

Circuit has held that, under the express terms of K.S.A. § 60-203(c), an entry of appearance

satisfies service of process necessary to commence an action under § 60-203 for purposes of the

statute of limitations.[46]  Additionally, the Kansas Supreme Court has held that "[j]urisdiction

over the person of the defendant may be acquired only by issuance and service of process in the

method prescribed by statute or by voluntary appearance."[47]

Here, plaintiff filed the Oklahoma complaint on December 30, 2008, and counsel for all

defendants entered an appearance on February 2, 2009, within ninety days of filing the

Oklahoma complaint.  Thus, the first action was properly "commenced" under Kansas law when

defense counsel filed his entry of appearance.  Although defense counsel filed motions to dismiss

the same day he entered his appearance, defendants have not argued that they challenged service

of process in these motions.  Thus, defense counsel's appearance "commenced" the action.

Furthermore, the Tenth Circuit has suggested that the signing and filing of a waiver of

---

[43]*Witherspoon v. Roadway Express, Inc.*, 782 F. Supp. 567, 572–73 (D. Kan. 1992) (citing K.S.A. § 60-203).

[44]K.S.A. § 60-203.

[45]K.S.A. § 60-203(c).

[46]*Jenkins v. City of Topeka*, 136 F.3d 1274, 1276 (10th Cir. 1998) (citing *Dotson v. State Highway Comm'n*, 426 P.2d 138, 143 (Kan. 1967)); *see also Lindenman v. Umscheid*, 875 P.2d 964 (Kan. 1994); *Burnett v. Perry Mfg., Inc.*, 151 F.R.D. 398 (D. Kan. 1993) (applying § 60-203(c) in the context of the Kansas savings statute, § 60-518); *Super Film of Am., Inc. v. UCB Films, Inc.*, Case No. 02-4146-SAC, 2004 WL 1732307, at *2 (D. Kan. July 9, 2004).

[47]*Kan. Board of Regents, Univ. of Kan. Med. Ctr. v. Skinner*, 987 P.2d 1096, 1099 (Kan. 1999) (citing *Haley v. Hershberger*, 485 P.2d 1321 (Kan. 1971)).

service form under Federal Rule of Civil Procedure 4 constitutes "service" for purposes of commencing an action under K.S.A. § 60-203(a).[48] Even though K.S.A. § 60-203 does not include an express waiver-of-service provision, § 60-204 states that "[t]he methods of serving process as set forth in article 3 of this chapter shall constitute sufficient service of process . . . but they shall be alternative to, and not in restriction of different methods specifically provided by law." Courts have held that Kansas's 90-day period for service of process is to be consistently enforced in light of Kansas's statute of limitations,[49] but defendants have not cited any authority holding that *only* formal service of process will "commence" an action. In fact, the Kansas Supreme Court has held that notice or knowledge of the pendency and the nature of an action against a party "must come from process of service, or there must be a valid waiver."[50]

Here, plaintiff obtained a signed waiver from Old Dominion and Smith, which she subsequently filed in the Oklahoma action less than ninety days after she filed the complaint. Thus, the Oklahoma action was "commenced" against Old Dominion and Smith under Kansas law. Protective, however, never entered a wavier of service form, and it is disputed whether Protective received formal service of process. Nevertheless, the Court finds the action was "commenced" against Protective when defense counsel filed an entry of appearance on its behalf.

---

[48]*See, e.g., Leavens v. Foster*, 132 F.3d 43 (Table), Case No. 97-3054, 1997 WL 755149, at *2 (10th Cir. Dec. 4, 1997) (holding that plaintiff's action was not timely commenced because "the waiver of service was both presented and filed outside the 90-day period provided for in Kan. Stat. Ann. § 60-203(a)(1)," but indicating that the action was "commenced" after the statute of limitations had expired); *Davis v. Liese*, 353 F. App'x 95, 98 (10th Cir. 2009) (holding that "Rule 4(d) requires that the waiver be executed by the defendant, returned to the plaintiff, and filed with the court. Formal service is excused only upon the filing of the executed waiver").

[49]*See, e.g., Leavens*, 1997 WL 755149, at *1–*2.

[50]*Kan. Board of Regents*, 987 P.2d at 1099.

Therefore, the Court finds that the first action was properly "commenced" pursuant to Kansas law within the two-year limitations period when defense counsel entered his appearance or when Old Dominion's and Smith's waiver of service forms were signed and filed with the Oklahoma federal court. The Oklahoma action was properly "commenced within due time" under Kansas law, and the second action receives the benefit of the Kansas savings statute on this alternative basis as well.

**B.      Certification of Questions to the Kansas Supreme Court**

Defendants ask the Court to certify the following questions to the Kansas Supreme Court: (1) whether an action may be deemed "commenced" under K.S.A. § 60-203 if it was filed out of state and was served upon an agent not authorized under K.S.A. §§ 60-304 and 60-306 to receive service of process for the defendants; (2) whether a Kansas statute of limitations can be tolled by the filing of an action in a state other than Kansas;[51] and (3) whether K.S.A. § 60-518 can be applied to permit the maintenance in Kansas of an action that was first filed in a state other than Kansas, but became barred by the applicable Kansas statute of limitations.

Pursuant to K.S.A. § 60-3201, the Kansas Supreme Court may answer questions of law certified to it, when requested by the certifying court:

> [I]f there are involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the supreme court and the courts of appeals of this state.

---

[51]The Court notes that the Kansas savings statute does not "toll the statute of limitations," but grants a post-dismissal six-month extension in limited circumstances. *See Elliott v. White, O'Connor & Werner, P.A.*, 750 F. Supp. 451, 454 (D. Kan. 1990) ("K.S.A. 60-518 is a saving statute and not a tolling statute. It does not stop or toll the running of the statute of limitations but preserves or saves to the plaintiff six months to file a second action if the statute of limitations has run during the pending of the first action and that action is dismissed.").

A decision to certify questions to the Kansas Supreme Court rests within the sound discretion of the federal court.[52] It is not to be "routinely invoked whenever a federal court is presented with an unsettled question of state law."[53] And, even if there is no state law governing an issue, federal courts are not obligated to certify the question.[54] "Absent 'some recognized public policy or defined principle guiding the exercise of the jurisdiction conferred,' federal courts bear a duty to decide questions of state law when necessary to render a judgment."[55] A court should not resort to certification "when the relevant sources of state law available to it provide a discernible path for the court to follow."[56]

This Court was asked to certify similar questions to the Kansas Supreme Court, but declined, noting:

> *Prince* is precedent binding upon this court. The Tenth Circuit in *Prince* found that the weight and trend of authority favored its interpretation of [the Kansas] savings statute. The court also necessarily found that the Kansas Supreme Court would follow this authority. Had the Tenth Circuit wanted to certify this issue, it could have, for the Kansas Uniform Certification of Questions of Law Act existed in 1983. K.S.A. 60-3201 (1979). [Defendant] does not point to any Kansas court decisions after *Prince* that indicate the Tenth Circuit may have erred in its judicial prediction. Under these circumstances, it seems inappropriate for the district court to certify the very issue directly resolved in *Prince*.[57]

---

[52]*Hartford Ins. Co. of the Midwest v. Cline*, 427 F.3d 715, 716–17 (10th Cir. 2005); *Allstate Ins. Co. v. Brown*, 920 F.2d 664, 667 (10th Cir. 1990).

[53]*Armijo v. Ex Cam. Inc*., 843 F.2d 406, 407 (10th Cir. 1988).

[54]*Hollander v. Sandoz Pharm., Corp.*, 289 F.3d 1193, 1217 n.22 (10th Cir. 2002); *Boyd Rosene & Assocs. v. Kan. Mun. Gas*, 178 F.3d 1363, 1365 (10th Cir. 1999).

[55]*Kan. Judicial Review v. Stout*, 519 F.3d 1107, 1119 (10th Cir. 2008) (quoting *Copier ex rel. Lindsey v. Smith & Wesson Corp.*, 138 F.3d 833, 838 (10th Cir. 1998)).

[56]*Tidler v. Eli Lilly & Co.*, 851 F.2d 418, 426 (D.C. Cir. 1988).

[57]*Harnett v. Parris*, Case No. 94-42510-SAC, 1995 WL 550036, at *11 (D. Kan. Aug. 9, 1995).

Subsequently, this Court has the benefit of the Kansas Court of Appeals decisions in *Campbell v. Hubbard*[58] and *Chatterton v. Roberts*,[59] which both thoroughly analyzed and resolved the very question the Kansas Supreme Court declined to address in *Jackson v. Prairie Oil & Gas Co.*[60]—the only case upon which defendants rely. Based on the law discussed above, the Court finds that Kansas courts have provided sufficient direction to permit this Court to make a definitive ruling on the issues raised in defendants' motions to dismiss.[61] Thus, the Court finds certification of the questions raised by defendants and resolved in this Memorandum and Order is unwarranted.

### C.    Plaintiff's Direct Action Claim Against Protective

Finally, Protective argues that the Kansas savings statute does not apply to claims alleged for the first time in the second action. Plaintiff filed the first action in Oklahoma on December 30, 2008. On January 7, 2009, she filed an Amended Complaint, including Protective as a party.

Protective is not arguing that the Amended Complaint did not relate back to the original Complaint, but instead argues that the Complaint filed in Kansas federal court included a new claim never previously alleged: that Protective is liable pursuant to K.S.A. § 66-1,128, because it issued a motor vehicle insurance policy to Old Dominion that covered Smith and that was filed with and approved by the Kansas Corporation Commission. Protective argues that "[n]either the original Complaint nor the Amended Complaint filed in Oklahoma litigation included any

---

[58] 201 P.3d 702 (Kan. Ct. App. 2008).

[59] 228 P.3d 441 (Table), 2010 WL 1462741, at *2 (Kan. Ct. App. Apr. 8, 2010).

[60] 222 P. 1114 (Kan. 1924).

[61] *See Sports Unlimited, Inc. v. Lankford Enters., Inc.*, 275 F.3d 996, 1000–01 (10th Cir. 2002) (holding that a decision by the Kansas Court of Appeals is authoritative in federal courts on a question of state law, "even though it [is] decided by the intermediate appellate court of Kansas, not the highest court of the state").

allegation that could be construed to state [a] claim of direct negligence against Old Dominion,"[62] and that the only claim brought against Protective in Oklahoma was "Defendant, Protective Insurance Company, is the liability insurance carrier of the Defendant, Old Dominion Freight Lines, Inc., and is a proper party to this action."[63]  Protective argues that, because this claim was not fully set forth in the original action, it cannot be brought for the first time in the second action because it does not have the protection of the Kansas savings statute.  Plaintiff responds by noting that Protective was included as a party in the first action for the purpose of allowing plaintiff to assert liability against it on the basis of its status as the insurer for the motor vehicle insurance policy owned by Old Dominion, even though K.S.A. § 66-1,128 was not expressly cited in the Complaint.  Plaintiff states that any failure to allege sufficient facts in the first action now has been corrected in the second action.

Under Kansas law, a second action may only benefit from the safeguards of the savings statute, K.S.A. § 60-518, if it is "substantially similar" to the first action previously dismissed.[64] The Kansas Court of Appeals explained in *Taylor v. International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers, AFL-CIO (IUE)*[65]:

> The saving statute applies only if the original action and the subsequent action are substantially the same.  Where the parties and the relief sought in the new action are different from those in the original action, the actions are not substantially the same, and the savings statute does not apply.  In addition, where the relief sought is the same in both actions, but the defendants are different,

---

[62](Doc. 10 at 2.)

[63]*Id.* at 3.

[64]*Taylor v. Int'l Union of Elec., Elec., Salaried, Machine & Furniture Workers, AFL-CIO (IUE)*, 968 P.2d 685, 676 (Kan. Ct. App. 1998); *see also* 5 Kan. Law & Prac., Code of Civ. Proc. Ann. § 60-518 (2009).

[65]968 P.2d 685 (Kan. Ct. App. 1998).

the actions are not substantially the same for purposes of the savings statute.[66]

Generally, Kansas courts have held that a change in parties, or a change in the capacity in which a party is suing or being sued, prevents two actions from being substantially similar.[67] Neither of those circumstances are present here. However, some courts have extended this reasoning to hold that new claims in the second action not previously alleged, will prevent a second action from being substantially similar to its predecessor.[68] When a second action is not "substantially similar" to the first, it cannot benefit from the savings statute.[69] The Tenth Circuit has indicated that, although never resolved by a Kansas court, new claims or parties might be dismissed from the action to make it "substantially similar."[70]

Although some courts have held that the addition of new claims *and* new parties in the second action will prevent it from being "substantially similar" to its predecessor, this Court has found no Kansas authority holding that the mere addition of new claims will remove the second

---

[66]*Id.* at 676 (quoting *Day v. NLO, Inc.*, 798 F. Supp. 1322, 1328 (S.D. Ohio 1992)) (emphasis and internal modifications omitted).

[67]*Id.* at 690 (citing *Rogers v. Williams, Larson, Voss, Strobel & Estes*, 777 P.2d 836, 839 (Kan. 1989)); *see also Marten v. Godwin*, Case No. 08-4031-EFM, 2009 WL 2475257, at *2 & n.16, *3 (D. Kan. Aug. 12, 2009) (holding that, although the addition of new claims and parties takes an action outside the protection of K.S.A. § 60-518, the removal of claims or parties previously asserted in the original action does not take an action outside the protection of K.S.A. § 60-518).

[68]*Karlin v. City of Beloit, Kan.*, Case No. 08-2331-JWL, 2008 WL 4642284, at *5 (D. Kan. Oct. 17, 2008) (dismissing claims because plaintiff "added an entirely new claim under the Religious Land Use and Institutionalized Persons Act, and has added claims of retaliation, First Amendment infringement and due process violations," in addition to making various other changes to the parties); *Brown v. Alma, Inc.*, 2007 WL 3046706, at *2 (D. Kan. Oct. 16, 2007) (dismissing claims because plaintiff added a new defendant *and* new claims).

[69]*Taylor*, 968 P.2d at 690.

[70]*Taylor v. Casey*, 66 F. App'x 749, 753–54 (10th Cir. 2003) (discussing whether the law was settled on this issue in order to determine whether attorney committed legal malpractice); *cf. Goldsmith v. Learjet, Inc.*, 90 F.3d 1490, 1495 (10th Cir. 1996) (dismissing only part of the claims).

action from the protection of the savings statute.  In *Thompson v. Beeler*,[71] the second action was not similar to its predecessor because the entire cause of action had changed and the relief sought was different.[72]  In *Northern Natural Gas Company v. L.D. Drilling, Inc.*,[73] the district court noted that, under Kansas precedent, "substantially similar" does not necessarily require that any related claim not previously alleged in the initial complaint is forfeited in the second action.[74]  The court declined to express any opinion on the proper application of K.S.A. § 60-518 to new claims because the "new claims" alleged in *Northern* arose after the first action, and thus, were properly added to the second action.[75]  In *Harnett v. Parris*,[76] the district court concluded that K.S.A. § 60-518 does not bar all claims that might be asserted in the first action from being included in the second filing.[77]  The court noted that the express language of K.S.A. § 60-518 requires merely the same "action" to be based on the same operative facts, not the same "legal theories" to be asserted in both actions.[78]  Finally, in *Brice-Nash v. Hutchinson Interurban Ry.*

---

[71]77 P. 100 (Kan. 1904).

[72]*Id.* at 101.

[73]Case No. 08-1405-WEB, 2009 WL 3739735 (D. Kan. Nov. 6, 2009).

[74]*Id.* at *12.

[75]*Id.*

[76]Case No. 94-4251-SAC, 1995 WL 550036 (D. Kan. Aug. 9, 1995).

[77]*See id.* at *7–*8.

[78]*Id.* at *7 (permitting the addition of new claims based on the same facts alleged in the original action). The court cited *Chandler v. Denton*, 741 P.2d 855 (Okla. 1987), in support of its reasoning.  In *Chandler*, the Oklahoma Supreme Court analyzed the scope of the savings statute and held that

> Oklahoma jurisprudence uses the *transactional approach* for its definition of a "cause of action."  The operative event that underlies a party's claim delineates the parameters of his cause of action.  This conceptual approach ensures that litigants will be able to assert different theories of liability without violating the purposes of the statute of limitations.  That statute is designed to ensure that a

*Co.*,[79] the Kansas Supreme Court held that a second action cannot "ingraft causes that are barred [by the statute of limitations] upon those pleadings in the first action which are not barred."[80] But the Court found that the additional facts alleged in plaintiff's second action were based on the same cause of action and, therefore, did not allege "a new and distinct ground of recovery."[81]

This Court finds the reasoning of *Harnett* and *Brice-Nash* persuasive under the circumstances of this case. K.S.A. § 66-1,128 provides that an insurer may be held directly liable for the negligent operation of an insurance policy contract carrier under a theory of tort liability.[82] Section 66-1,128 states that no certificate or license shall be issued by the state corporation commission to any public or private motor carrier until and after an applicant files and has had approved a liability insurance policy.[83] Kansas courts have specifically held that, to allege liability against the insurer under this statute, plaintiff must allege the filing and approval of the liability insurance policy with the Kansas Corporation Commission.[84] However, the Kansas Supreme Court has held that K.S.A. § 66-1,128 creates neither contract liability nor a

---

party has notice of a claim against him within a statutory period of time and an adequate opportunity to prepare his case before potential evidence is lost or becomes stale.

*Id.* at 862–63 (emphasis in original, citations omitted). Although *Brice-Nash v. Hutchinson Interurban Ry. Co.*, 169 P. 189 (Kan. 1917), appears to take a narrower view than that established by Oklahoma jurisprudence, it does not prevent all subsequent amendment.

[79] 169 P. 189 (Kan. 1917).

[80] *Id.* at 189.

[81] *Id.*

[82] *Fitzgerald v. Thompson*, 204 P.2d 756, 756, 758 (Kan. 1949); K.S.A. § 66-1,128(a).

[83] K.S.A. § 66-1,128(a); *Aguirre v. Cont'l W. Ins. Co.*, Case No. 91-1520-K, 1992 WL 223851, at *2 (D. Kan. Aug. 31, 1992).

[84] *Dechand v. Ins. Co. of State of Pa.*, 732 F. Supp. 1120, 1121 (D. Kan. 1990).

statutory liability; it establishes the insurer's tort liability arising out of the insured's negligent operation of his business under the permit.[85]  The court explained the reason for permitting the insurer's liability to piggyback on the insured's negligence:

> [T]he statute under discussion is not substantive, but is remedial in nature.  It does not give the injured party any new rights or a new cause of action.  The injured party in a motor carrier accident has always had the right to file a damage action for his injuries and losses.  The power to sue the insurance company directly is only a statutory remedy designed to assist the injured party in effectuating a successful recovery when liability is established.[86]

The purpose of the statute is to protect "members of the public from negligent conduct of the motor-vehicle operator, not simply [to] protect[] the negligent operator against judgments rendered against him."[87]

Here, the plaintiff and defendants in the Oklahoma action and the Kansas action are identical.  Plaintiff argues that Protective was included in the original lawsuit so that plaintiff could assert liability against it directly, as the insurance carrier for Old Dominion and as the insurance provider for Smith at the time of the motor vehicle collision.  Thus, plaintiff is not alleging a "new" claim against Protective not previously considered or intended in the first action.  The pleadings in the first action set forth facts regarding the vehicle collision between Smith and Short and facts regarding the alleged injuries sustained by Posey, making a cause of action against the insurance carrier, who was already a "proper party," likely and foreseeable.

---

[85]*Kirtland v. Tri-State Ins. Co.*, 556 P.2d 199, 201–02 (Kan. 1976) (quoting *Fitzgerald v. Thompson*, 204 P.2d 756, 758 (Kan. 1949).

[86]*Id.* at 202.  On the basis of this reasoning, the court held that the same two-year statute of limitations applied both to the underlying negligence action and the action brought against the insurer under K.S.A. § 66-1,128. *Id.*

[87]*Dechand*, 732 F. Supp. at 1123 (citing *Dunn v. Jones*, 53 P.2d 918 (Kan. 1936)).

As Protective notes, the statutory elements of a direct action under K.S.A. § 60-1,128 were not fully alleged in the first action. The Oklahoma action never fully set forth plaintiff's direct action claim against Protective.[88] In filing the second action, plaintiff supplemented the factual and legal allegations to more fully explain Protective's liability under the circumstances. Nevertheless, Protective cannot claim it was without notice of the allegations against it. In fact, Protective states that it filed a motion to dismiss for failure to state a claim in the Oklahoma action in order to have the direct action claim dismissed. Thus, it appears Protective was aware of the liability plaintiff was asserting against it. Plaintiff's failure to cite K.S.A. § 66-1,128 in the Oklahoma action, therefore, does not make the Kansas action substantially different.[89]

The present action alleges parties, facts, and claims consistent with the original lawsuit. Because plaintiff's direct action claim is based on and derived from the underlying action for negligence set forth in the first action, the addition of the direct action claim against Protective does not prevent this action from being "substantially similar" for purposes of benefitting from K.S.A. § 60-518. As plaintiff notes, her direct action claim is not radically new and unforeseen. Rather, it is based on the negligence already alleged in the original Oklahoma pleadings, and is alleged against a party already included as a "proper party" in the original action. Furthermore, as the Kansas Supreme Court has explained, a direct action claim is one based in tort law. Thus, plaintiff's present action is not "substantially" different from her original action, but in fact, is one that arises out of her original claims.

---

[88]*See id.* at 1121 (holding that in order to state a claim against the insurer under K.S.A. § 66-1,128, plaintiff must allege the filing and approval of the liability insurance policy with the Kansas Corporation Commission). These elements were not alleged in the Oklahoma complaint or the amended complaint.

[89]*See Brice-Nash v. Hutchinson Interurban Ry. Co.*, 169 P. 189, 189 (Kan. 1917).

Because the Court finds that the savings statute appropriately applies to plaintiff's negligence action, the Court similarly finds that it applies to plaintiff's tort action under the direct action statute. Even if plaintiff's Kansas complaint is not identical to her Oklahoma pleadings, her Kansas action is substantially similar and, thus, her direct action claim does not violate the rule of substantial similarity set out in *Taylor*. The Court denies Protective's motion to dismiss on this basis.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants's Motions to Dismiss and Alternative Motions for Certification to the Kansas Supreme Court (Docs. 6, 10) are **denied.**

**IT IS SO ORDERED.**

Dated: June 24, 2010

                                    S/ Julie A. Robinson
                                   JULIE A. ROBINSON
                                   UNITED STATES DISTRICT JUDGE