**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **JOANNA M. COOPER, Administrator for** | ) | |
| **the ESTATE OF JOHN RAMEY POSEY,** | ) | |
| **Deceased,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 09-2441-JAR** |
| | ) | |
| **OLD DOMINION FREIGHT LINE, INC.,** | ) | |
| **VIRGEL SMITH, and PROTECTIVE** | ) | |
| **INSURANCE COMPANY,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

This case arises out of a motor vehicle collision that occurred in Crawford County,

Kansas on January 4, 2007. John Ramey Posey was a passenger in a vehicle driven by Marilyn

Short, which collided with a tractor-trailer operated by defendant Virgel Smith and owned by

defendant Old Dominion Freight Line, Inc. ("Old Dominion"). Plaintiff Joanna Cooper, the duly

appointed Administatrix of Posey's Estate, alleges negligence claims against defendants Smith,

Old Dominion, and Protective Insurance Company ("Protective").

This matter comes before the Court on the following motions for summary judgment

filed by defendants: (1) Motion for Summary Judgment filed by Protective (Doc. 70); (2) Motion

for Summary Judgment filed by Smith (Doc. 71); (3) Motion for Summary Judgment filed by

Old Dominion (Doc. 72); (4) Combined Motion for Partial Summary Judgment filed by all

defendants (68); and (5) Second Combined Motion for Partial Summary Judgment filed by all

defendants (Doc. 69). The Court also considers plaintiff's Motion for Leave to File Sur-reply

(Doc. 89) with regard to the combined motions for summary judgment. The motions are now

under advisement and the Court is prepared to rule.  As explained in more detail below, the

Court denies defendants' motions for summary judgment on the statute of limitations issue,

grants Protective's motion for summary judgment on the issue of direct liability, and denies the

combined motions for summary judgment.  The Court grants plaintiff's motion for leave to file a

surreply.

## I.    Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no

genuine dispute as to any material fact" and that it is "entitled to a judgment as a matter of law."[1]

In applying this standard, the court views the evidence and all reasonable inferences therefrom in

the light most favorable to the nonmoving party.[2]  "There is no genuine issue of material fact

unless the evidence, construed in the light most favorable to the nonmoving party, is such that a

reasonable jury could return a verdict for the nonmoving party."[3]  A fact is "material" if, under

the applicable substantive law, it is "essential to the proper disposition of the claim."[4]  An issue

of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact

could resolve the issue either way."[5]

The moving party initially must show the absence of a genuine issue of material fact and

---

[1]Fed. R. Civ. P. 56(a).

[2]*City of Harriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

[3]*Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[4]*Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[5]*Adler*, 144 F.3d at 670 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

entitlement to judgment as a matter of law.[6]  In attempting to meet this standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.[7]

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[8]  The nonmoving party may not simply rest upon its pleadings to satisfy its burden.[9]  Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[10]

In the case of an affirmative defense, the defendant must "demonstrate that no disputed material fact exists regarding the affirmative defense asserted."[11]  Once the defendant meets this burden, the plaintiff must "demonstrate with specificity the existence of a disputed material fact. If the plaintiff fails to make such a showing, the affirmative defense bars his claim, and the defendant is then entitled to summary judgment as a matter of law."[12]

Finally, summary judgment is not a "disfavored procedural shortcut"; on the contrary, it

---

[6]*Spaulding,* 279 F.3d at 904 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986)).

[7]*Adams v. Am. Guar. & Liab. Ins. Co.,* 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler,* 144 F.3d at 671); *see also Kannady v. City of Kiowa,* 590 F.3d 1161, 1169 (10th Cir. 2010).

[8]*Anderson,* 477 U.S. at 256; *Celotex,* 477 U.S. at 324; *Spaulding,* 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).

[9]*Anderson,* 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.,* 256 F.3d 1013, 1017 (10th Cir. 2001).

[10]*Mitchell v. City of Moore, Okla.,* 218 F.3d 1190, 1197-98 (10th Cir. 2000) (quoting *Adler,* 144 F.3d at 671); *see Kannady,* 590 F.3d at 1169.

[11]*Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997).

[12]*Id.*

is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[13]  In responding to a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."[14]  When examining the underlying facts of the case, the Court is cognizant that it may not make credibility determinations or weigh the evidence.[15]

## II.     Uncontroverted Facts

The following facts are either uncontroverted, stipulated to, or viewed in the light most favorable to plaintiff.  John Ramey Posey was a passenger in a vehicle driven by Marilyn Short on January 4, 2007.  On that date, the vehicle driven by Short was involved in a motor vehicle collision with a tractor-trailer operated by Smith and owned by Old Dominion.  Immediately before the collision, both vehicles were traveling eastbound on U.S. 400 Highway in Crawford County, Kansas, a two-lane roadway.  The collision occurred in the westbound lane of U.S. 400 Highway near its intersection with a field entrance.  The collision occurred as Smith was attempting to pass the Short vehicle and Short turned left.  Smith's tractor impacted the driver's side of the Short vehicle.

Smith was employed by Old Dominion at the time of the collision and was acting within the course and scope of his employment.  Prior to January 4, 2007, Protective issued to Old Dominion a policy of motor vehicle liability insurance.  Smith and Old Dominion were each an

---

[13]*Celotex,* 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[14]*Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir. 1988).

[15]*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

insured under the policy at the time of the collision.

Posey died on June 7, 2008, while a resident of Tulsa County, Oklahoma. Plaintiff was appointed personal representative of the Estate of Johnny Ramey Posey and commenced probate proceedings in Tulsa County, Oklahoma. On March 13, 2009, plaintiff filed a Notice to Creditors with the probate court, providing a deadline of May 29, 2009 for any creditor to present claims to plaintiff, or be forever barred. Appendix A to this Notice provides a list of seventeen possible creditors, all of which appear to be health care providers. The Notice to Creditors was delivered by U.S. Mail to the individuals and entities identified in Exhibit A to the Notice, and it was published in *The Tulsa Daily Commerce & Legal News* on March 20, 2009 and on March 27, 2009. On March 29, 2009, Hillcrest Medical Center filed with the Tulsa County district court a creditor's claim against the Estate in the amount of $121.02, for medical goods and services provided. The claim was signed by plaintiff and by the presiding judge. On June 23, 2009, the docket reflects that the claim by Hillcrest Medical Center was approved and on June 26, 2009, Hillcrest Medical Center voluntarily dismissed its claim without prejudice.

According to the docket in the probate case, no other creditors had filed claims with the court as of October 21, 2010. However, the following creditors' claims were timely presented to plaintiff: (1) The Orthopedic Center for $40,250.00; (2) Ortho Center Pain Management for $2576.00; (3) Hillcrest Medical Center for $121.02; (4) Neurologic Services of Oklahoma, LLC for $6425.00; and (5) Synaptic Resources for $4400.00. Additionally, eight entities that provided medical services to Posey prior to his death filed liens with the Tulsa County Clerk, each of which were still of record with the Tulsa County Clerk as of November 23, 2010.

Posey was a Medicaid beneficiary through a state Medicaid program administered by the

Oklahoma Health Care Authority ("OHCA"). Consequently, OHCA paid for some amount of the medical expenses incurred by Posey.

On August 4, 2008, the inventory of Posey's Estate was appraised at approximately $130, in addition to "[p]ossible proceeds from recovery/settlement of action stemming from an auto accident which occurred January 9 2007."[16]

Marilyn Short maintained a policy of motor vehicle insurance with Progressive Direct Insurance Company ("Progressive") on January 4, 2007. The Progressive policy provided personal injury protection ("PIP"). Progressive paid PIP coverage in the amount of $5000 to three of Posey's health care providers.

On December 30, 2008, plaintiff filed an action in the United States District Court for the Northern District of Oklahoma ("Oklahoma action") containing allegations against Smith, as the alleged operator of the tractor trailer, Old Dominion, as Smith's alleged employer, and "Progressive Insurance Company." On January 7, 2009, plaintiff filed an Amended Complaint in the Oklahoma action, substituting Protective for Progressive Insurance Company.

Plaintiff attempted service of process upon Protective by mailing a summons and a copy of the Amended Complaint to the Oklahoma Insurance Department.[17] On January 27, 2009, Smith and Old Dominion waived service of the Complaint under Fed. R. Civ. P. 4. On February 2, 2009, counsel Robert P. Coffey, Jr. entered an appearance in the Oklahoma action for Old Dominion, Smith, and Protective. That same day, defendants filed motions to dismiss in the Oklahoma action based upon lack of personal jurisdiction, improper venue, and failure to state a

---

[16](Doc. 69, Ex. 9.)

[17]While this fact is admitted by plaintiff, Exhibit 5 to Protective's motion appears to be the waiver of service forms sent by plaintiff with the Original Complaint, dated December 30, 2008.

claim. On March 2, 2009, before the court ruled on the motions to dismiss, plaintiff voluntarily dismissed the Oklahoma action pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i). On August 21, 2009, Plaintiff filed the present case in the District of Kansas ("Kansas action") arising from the same collision and with many of the same allegations plead in the Oklahoma action.

Neither the original Complaint nor the Amended Complaint filed in the Oklahoma action included any allegation that could be construed to state that Old Dominion filed a liability insurance policy with the Kansas Corporation Commission ("KCC"), to state that the KCC approved a liability insurance policy filed by Old Dominion or to state a claim of negligent operation of a motor carrier.

Old Dominion has its principal place of business in North Carolina. In 2007, Old Dominion maintained a Federal Motor Carrier Safety Administration Unified Carrier Registration with a base state of South Carolina. In 2008 and 2009, the registration reflects Old Dominion's base state as North Carolina.[18] A search of the KCC's database for registered motor carriers shows that "Old Dominion Freight Line, Inc." is not registered with the KCC. The KCC "does not guarantee this information to be free of errors or inaccuracies."[19]

## III.  Discussion

### A.  *Statute of Limitations*

---

[18]Plaintiff objects to the admissibility of Exhibits 1 and 2, arguing that they lack foundation and that they were not produced during discovery. Exhibit 1 appears to be an official public record made available by the Unified Carrier Registration System. Exhibit 2 is a printout of a search result from the Kansas Corporation Commission's database of registered motor carriers. As such, they are self-authenticating under Fed. R. Evid. 902(5). Furthermore, plaintiff has not established that these public records are subject to disclosure under Fed. R. Civ. P. 26, nor that they should be stricken under Rule 37 for failure to disclose. Therefore, the Court overrules and denies plaintiff's objections to this evidence. Plaintiff's remaining arguments with regard to Exhibits 1 and 2 go to the weight and not the admissibility of the evidence. The Court does not weigh the evidence on summary judgment, it views the evidence in the light most favorable to the nonmoving party.

[19](Doc. 70, Ex. 2.)

All three defendants argue that summary judgment is appropriate because the statute of limitations bars plaintiff's claims. This issue was previously briefed and decided on defendants' motions to dismiss and requests for certification to the Kansas Supreme Court. It remains undisputed that the two-year statute of limitations under K.S.A. § 60-513 applies. But defendants argued in their motions to dismiss, and argue again on summary judgment, that the Kansas action was not timely commenced under Kansas law because the savings statute does not apply. Plaintiff concedes that if the savings statute does not apply, the Kansas action was commenced outside the two-year statute of limitations that began to run on January 4, 2007. The issues decided by this Court on the motions to dismiss were: (1) whether plaintiff's Oklahoma action was properly "commenced" before the two-year statute of limitations expired, and (2) whether the Kansas savings statute applies to an action originally filed in a state other than Kansas. Defendants raise these arguments once again on summary judgment.

The Court declines to reconsider its previous ruling that the savings statute applies in this case and that the Oklahoma action was properly commenced under both Oklahoma and Kansas laws. The Court incorporates by reference its previous ruling.[20] These issues are questions of law and defendants have made no argument about why the summary judgment standard should alter the Court's previous ruling, denying defendants' motions to dismiss. There are no new uncontroverted material facts before the Court and defendants' policy arguments are unavailing, as the Court previously considered them.

The issues raised by defendants were squarely addressed by the Kansas Court of Appeals

_____

[20](Doc. 27.)

8

in *Campbell v. Hubbard*.[21]  In *Campbell*, the court held that when a case is first-filed in another state, Kansas applies its own savings statute, but incorporates the definition of "commencement" from the state of the original action.[22]  Based on this precedent, this Court applied the Kansas savings statute to plaintiff's action and, in so doing, incorporated Oklahoma's definition of "commencement" to determine whether the original action was "commenced within due time."[23]  Under Oklahoma law, an action is "commenced" at the time a petition is filed with the court.[24]  Because plaintiff filed the petition in the Oklahoma action on December 30, 2008, it was commenced within the two-year statute of limitations.[25]

The Court declines defendants' invitation to ignore the *Campbell* decision, a recent decision by the Kansas Court of Appeals that is on point, in favor of dicta in a 1924 Kansas Supreme Court opinion.[26]  Since 1924, "both circuit and state courts have split on the issue of whether savings statutes apply to suits originally filed in sister states."[27]  The Tenth Circuit addressed the question directly in *Prince v. Leesona Corp., Inc.*,[28] and decided that Kansas courts

---

[21]201 P.3d 702, 704–06 (Kan. Ct. App. 2008)

[22]*Id.*

[23]K.S.A. § 60-518.

[24]12 Okla. Stat. Ann. tit. 12, § 2003; *see also* Committee Comment to Section 2003 ("Section 2003 changes Oklahoma law and adds needed certainty to making the date of filing of the petition the date of commencement of the action for all purposes, including application of the statute of limitations."); *Stone v. Estate of Sigman*, 970 P.2d 1185, 1188 (Okla. Civ. App. 1998).

[25]The Court further found that the case was properly commenced under Kansas law.

[26]*Jackson v. Prairie Oil & Gas Co.,* 222 P. 1114 (Kan. 1924).

[27]*Prince v. Leesona Corp., Inc.*, 720 F.2d 1166, 1168–69 (10th Cir. 1983).

[28]*Id.*

would apply the savings statute to suits originally filed in sister states.[29]  The Court declines to

dismiss this opinion and instead find that the Kansas Court of Appeals decision is contrary to

what defendants classify as the majority rule.  The Court follows the *Campbell* and *Prince*

decisions and holds that plaintiff commenced her Oklahoma action within the two-year statute of

limitations and that the Kansas savings clause applies to the Kansas action; therefore, it was

timely filed.

### B.    Direct Action Against Protective

Similar to the statute of limitations issue, this Court previously ruled on many of the

issues raised by Protective on summary judgment with regard to plaintiff's direct action claim.

To the extent the Court has already ruled on those arguments, it incorporates by reference its

ruling on the motion to dismiss.[30]  However, Protective now further argues on summary

judgment that the Pretrial Order does not include a claim for carrier negligence against

Protective and that federal law does not allow a direct action claim.  Because the Court finds that

there is no genuine issue of material fact about whether the insurance policy in question was

filed and approved by the KCC, it need not decide whether federal law preempts Kansas law

allowing a direct action against an insurer under these circumstances.

In her theory of recovery set forth in the Pretrial Order, plaintiff argues that she is entitled

to damages based on the "negligent manner in which Smith operated his motor vehicle on the

evening of the collision."  She bases her claim against Old Dominion on the doctrine of

---

[29]*Id.*

[30]Protective first argues that plaintiff failed to <u>plead</u> a direct action claim in the Oklahoma action, which
bars her from such a claim in the Kansas action.  This argument goes to the statute of limitations issue, already ruled
upon in the Court's June 25, 2010 Memorandum and Order.

*respondeat superior.*  Plaintiff sets forth her theory of liability against Protective as follows:

> Plaintiff . . . is entitled to recover against Protective . . . under
> K.S.A. § 66-1,128.  Protective issued to Old Dominion a policy of
> motor vehicle liability insurance prior to the collision.  The policy
> was in full force and effect on the collision date and both Old
> Dominion and Smith are an insured under the policy.[31]

The Pretrial Order "'measures the dimensions of the lawsuit,' and 'control[s] the subsequent

course of the action unless modified by a subsequent order.'"[32]

Protective argues that in order to maintain a direct action against an insurer, the plaintiff

must allege that injuries resulted from the motor carrier's negligence, citing *Aguirre v.*

*Continental Western Insurance Co.*[33]  Plaintiff does allege carrier negligence against Protective;

she states her claim as arising under K.S.A. § 66-1,128.  Unlike in *Aguirre*, plaintiff does not

allege that Protective is liable based on the breach any duty other than its status as the insurer of

Smith and Old Dominion.[34]  It is clear from the Pretrial Order that plaintiff asserts a claim for

direct liability against Protective based on Smith's negligence.

K.S.A. § 66-1,128(a) provides:

> (a) Except as provided in subsection (c) or pursuant to federal
> statutes, no certificate, permit, or license shall be issued by the
> commission to any public motor carrier of property, household
> goods or passengers or private motor carrier of property, until the
> applicant has filed with the commission a liability insurance policy
> approved by the commission, in such reasonable amounts as the

---

[31](Doc. 79, at 8–9.)

[32]*Shaub v. Newton Wall Co/UCAC*, 153 F. App'x 461, 464 (10th Cir. 2005) (quoting *Hullman v. Bd. of Trustees of Pratt Cmty. Coll.*, 950 F.2d 665, 668 (10th Cir. 1991); Fed. R. Civ. P. 16(e)).

[33]No. 91-1520-K, 1992 WL 223851 (D. Kan. Aug. 31, 1992).

[34]*See id.* at *3 (describing the plaintiff's claims as "based on four duties that the insurer allegedly breached. . . .  Thus, while plaintiff may bring a claim directly against the insurer, the claim he has brought does not qualify under the statute.").

> commission determines by rules and regulations is necessary to
> adequately protect the interest of the public with due regard to the
> number of persons and amount of property involved.

Kansas courts have specifically held that, to allege liability against the insurer under this statute, plaintiff must allege the filing and approval of the liability insurance policy with the KCC.[35] However, the Kansas Supreme Court has held that K.S.A. § 66-1,128 is not substantive; it establishes the insurer's tort liability arising out of the insured's negligent operation of a business under the permit.[36]

Plaintiff does allege in the Complaint that Protective's liability insurance policy was filed with and approved by the KCC.[37] But this allegation was not carried forward to the Pretrial Order. Defendant essentially argues that the Pretrial Order fails to allege the material fact that the liability insurance policy for Smith and Old Dominion was filed with and approved by the KCC. Plaintiff argues that she must only state a cause of action against an insured to state a cause of action against the insurer, but does not address the issue of KCC filing and approval. But the case cited to by plaintiff, *Fitzgerald v. Thompson*, makes clear that in addition to stating a cause of action in tort against the insurance permit holder, the plaintiff must allege the filing and approval of the policy.[38]

This issue is before the Court on summary judgment; therefore, the Court does not merely evaluate the sufficiency of the pleadings. On summary judgment, defendant has pointed

---

[35]*Dechand v. Ins. Co. of State of Pa.*, 732 F. Supp. 1120, 1121 (D. Kan. 1990).

[36]*Kirtland v. Tri-State Ins. Co.*, 556 P.2d 199, 201–02 (Kan. 1976) (quoting *Fitzgerald v. Thompson*, 204 P.2d 756, 758 (Kan. 1949)).

[37](Doc. 1 ¶ 9).

[38]*Fitzgerald*, 204 P.2d at 758.

to a lack of evidence that the liability insurance policy was filed and approval by the KCC and has also come forward with evidence that the policy was not filed with the KCC. Plaintiff does not controvert this fact outside of an evidentiary objection, nor does she come forward with evidence that would suggest the insurance policy was filed and approved. Because filing and approval of the insurance policy with the KCC is a prerequisite for liability under K.S.A. § 66-1,128, the Court finds that summary judgment is appropriate on plaintiff's direct action against Protective under § 66-1,128. In the absence of any evidence that the insurance policy was filed and approved with the KCC, there is no genuine issue of material fact with regard to this element of liability under K.S.A. § 66-1,128.

### C. *Causation and Damages*

Defendants filed two combined motions for summary judgment dealing with causation and damages. The first combined motion argues that there is no causal connection between the automobile collision and Posey's death; therefore, plaintiff cannot recover damages associated with his death. Plaintiff withdrew her claim for funeral expenses; therefore, this motion is denied as moot.

In addition to repeating their arguments that plaintiff may not recover for funeral or burial expenses, the second combined motion argues that plaintiff cannot recover for unpaid medical expenses or liens arising from nonpayment of Posey's medical expenses. Defendants further argue that the OHCA may not possess a lien against Posey's Estate because the lawsuit was not filed during his lifetime, but was filed instead by the Estate. The crux of defendants' argument is that the Estate should not be allowed to recover for medical expenses that it will not ultimately be obligated to pay; therefore, plaintiff should not be allowed to recover these

expenses as a matter of law.

This is a survival action brought by the administrator of John Posey's Estate to recover damages caused by the automobile collision that occurred on January 4, 2007.  The case was brought after the probate administration began in Tulsa County, Oklahoma district court.  "A survival action allows the personal representative to recover damages accrued by the injured party between the date of injury and death for the benefit of the decedent's estate."[39]

> The injured party's claim after his death becomes a part of the estate, and the damages recoverable are only those the injured person might have recovered had he lived.  Any funds made available through a recovery belong to the estate for the protection of its creditors and to compensate the estate for losses it has incurred.[40]

Had Posey lived, he would be "entitled to recover the reasonable value of medical care and expenses for the treatment of his . . . injuries . . . ."[41]  This reasonableness standard appears both in K.S.A. § 60-249a, governing damages in personal injury actions, and in K.S.A. § 40-3117, governing damages in tort actions that involve motor vehicles.  Section 40-3117 further provides: "For the purpose of this section, the charges actually made for medical treatment expenses shall not be conclusive as to their reasonable value.  Evidence that the reasonable value thereof was an amount different from the amount actually charged shall be admissible in all actions to which this subsection applies."

This standard was recently reaffirmed by the Kansas Supreme Court in *Martinez v.*

---

[39]*Mason v. Gerin Corp.*, 647 P.2d 1340, 1343 (Kan. 1982); *see* K.S.A. § 60-1801.

[40]*Kynaston v. United States*, 717 F.2d 506, 511 (10th Cir. 1983) (discussing Utah's survival statute).

[41]*Bates v. Hogg*, 921 P.2d 249, 252 (Kan. Ct. App. 1996); *accord Martinez v. Milburn Enters., Inc.*, 233 P.3d 205, 229 (Kan. 2010).

*Milburn Enterprises, Inc.*[42]  There, the Kansas Supreme Court surveyed and synthesized Kansas cases, Kansas federal district court cases, and cases from other jurisdictions on whether, in personal injury cases, the collateral source rule barred evidence of the amount originally billed by a health care provider for the plaintiff's medical treatment or the written-off amount the health care provider accepted in satisfaction of the amount billed.[43]  The holdings in *Martinez* include that the reasonable value of medical services approach is valid, and that "the charges 'actually made' or billed by the health care provider for plaintiff's medical treatment expenses are not conclusive as to their reasonable value: other evidence shall be admissible."[44] Defendants urge that *Martinez* should not be applied in survival actions.  But as already explained, the law is clear that in a survival action the estate may recover the damages that the injured person might have recovered had he or she lived.  Because the damages in this case will be guided by what Posey may have recovered if he had prosecuted this case when he was alive, the Court finds that *Martinez* applies.  It is for the finder of fact to determine the reasonable value of medical expenses that Posey incurred for treatment of the injuries he allegedly sustained as a result of the collision that may be recovered by his Estate.

Defendants' arguments on damages are premised on the assertion that Posey's Estate may not recover any damages that the Estate would not be liable to pay out, either directly to creditors or to satisfy liens.  Defendants first assert that plaintiff cannot recover unpaid medical expenses unless each health care provider to which plaintiff owed medical expenses filed a claim

---

[42]*Martinez*, 233 P.3d at 224.

[43]*Id.* at 210–20.

[44]*Id.* at 222.

with the Estate pursuant to Oklahoma law. Second, defendants argue that plaintiff may not

recover expenses already paid by the OHCA, Oklahoma's Medicaid agency. Defendants

maintain that these expenses are not recoverable as a matter of law by the Estate, regardless of

whether Posey could recover if he was alive, because such expenses are not "for the benefit of

the estate." Finally, defendants maintain that plaintiff cannot recover the subrogation amount

paid by Marilyn Short's insurance company, Progressive, because this item of damages was not

explicitly set forth in the Pretrial Order and because it has been waived by Progressive under the

doctrine of res judicata.

> 1.      **Creditor Claims and Liens**

Defendants point to the absence of creditor claims on the docket sheet in the probate case

as evidence that only Hillcrest Medical Center presented a claim to the Estate by May 29, 2009.

Plaintiff responds that five creditors timely submitted claims to the Estate and eight other

creditors timely filed liens with the Tulsa County Clerk pursuant to Okla. Stat. tit. 42, §§ 43, 46,

or 49.

Defendants reply that these claims are invalid because there is no evidence that they were

approved by the court. In her surreply, plaintiff counters that she responded to the summary

judgment argument that the creditor claims were not timely presented and was not fairly apprised

of defendants' argument that the claims must also be shown to have been approved. Moreover,

plaintiff contends that approval by the Estate is not practical at this time, and that it is not a

prerequisite for making a claim for medical expenses in a survival action.

> ***Creditor Claims***

Defendants argue that any creditor claim not presented <u>and</u> approved by the probate court

is forever barred pursuant to statute; therefore, the Estate can have no liability for any such unpaid medical expenses.  Defendants primarily rely on the fact that the only creditor claim on the docket in the probate case is the claim by Hillcrest Medical Center.  In the initial motion, defendants suggest that only a claim filed and reflected on the docket sheet constitutes a claim filed with the Estate under the applicable statute.  The governing Oklahoma statute does not support this interpretation.  Oklahoma probate procedure requires the personal representative of the estate to provide notice to creditors of the decedent, explaining that claims against the decedent must be "presented to the personal representative" or be forever barred.[45]  This statute does not require creditors to file their claim with the court.  The statute and notice form direct creditors having claims against the deceased to present the claim "to the named personal representative" at the address of the personal representative or at the address of the attorney for the personal representative.[46]  In this case, the statute required the creditors to present their claims to the personal representative by May 29, 2009.

On March 13, 2009, plaintiff filed its Notice to Creditors with the probate court, providing a deadline of May 29, 2009 for any creditor to present claims, or be forever barred. Appendix A to this Notice provides a list of seventeen possible creditors, all of which appear to be health care providers.  It is undisputed that the Notice was mailed to these creditors, as well as published.  Plaintiff has come forward with the her probate attorney's affidavit that five claims were timely presented to plaintiff in the manner prescribed by Okla. Stat. tit. 58, § 331.

Defendants reply that "the court file does not evidence approval of any claim other than

---

[45]Okla. Stat. tit. 58, § 331.

[46]*Id.*

17

that of Hillcrest Medical Center, is uncontroverted evidence that the remainder of the presented claims have not been approved." The Court agrees with plaintiff that this argument was not fairly presented in defendants' motion, but was asserted for the first time in the reply. Furthermore, defendants point the Court to no authority that these claims are procedurally barred under Oklahoma law by virtue of the fact that they do not appear on the docket. Section 337 sets forth the procedure for allowance and rejection of claims. Defendants are correct that when the personal representative allows a claim, it must be presented to the judge for approval and the judge must ultimately approve a creditor's claim in order for it to be allowed.[47] "If the claim be presented to the personal representative before the expiration of the time limit for the presentation of claims, the same is presented in time, though acted upon by the personal representative and/or by the judge after the expiration of such time."[48] Defendants point the Court to no authority that requires the Estate to act within a certain period of time to obtain court approval or rejection under the present circumstances. Defendants' contention that the claim must be filed and presented to the judge within a certain period of time is not supported by the plain language of section 337. The statute only provides time limits for when the personal representative or judge refuses to act upon a claim. As plaintiff points out in her surreply, obtaining such approval would be an exercise in futility given the undisputed fact that the Estate is valued at $130 unless and until plaintiff recovers in the instant lawsuit.

Defendants also argue for the first time in their reply that any claim for Posey's treatment that was provided more than three years ago will be barred by the applicable statute of

---

[47] Okla. Stat. tit. 58, § 337(A).

[48] *Id.* § 337(D).

limitations; since the Estate could raise a statute of limitations defense to such expenses, they cannot now be approved by the probate judge.[49]  First, the Court declines to consider an argument raised for the first time in the reply.  Second, defendants suggest that the "statute of limitations" that applies is the three-year statute for an action upon contract under Oklahoma law,[50] but the Court cannot find as a matter of law that this is the appropriate statute of limitations.  The creditor claims identified by plaintiff were submitted to the Estate in writing, so the five-year statute of limitations for an action upon written contract may apply.[51]  The Court also lacks evidence as to when these claims accrued.  Assuming these claims all surround treatment in 2007, according to Jeremy Ward's affidavit, they were presented to the Estate in 2009, well within the three-year statute of limitations.

Plaintiff has come forward with evidence that the five creditor claims were timely presented to the personal representative—the only basis for defendants' summary judgment motion.  The Court declines to consider arguments raised for the first time in the reply.  But even if the Court considered defendants' new arguments, it finds that plaintiff has come forward with evidence that creates a genuine issue of material fact about whether the five creditor claims presented to the Estate may be recovered as damages in this case.

### Liens

Plaintiff also maintains that the Estate should be able to recover the amounts of eight liens filed with the Tulsa County Clerk prior to Posey's death for medical services provided to

---

[49]*Id.* § 340 ("No claim must be allowed by the executor or administrator, or by the judge, which is barred by the statute of limitations.").

[50]Okla. Stat. tit. 12 § 95(A)(2).

[51]*Id.* § 95(A)(1).

19

him.  Defendants contend that plaintiff has failed to come forward with evidence that the Estate

would be obligated to pay the amounts of these claims to the medical providers, suggesting that

their only recourse is to follow the procedure set forth in sections 331 and 337 of the probate

code, or to sue to collect the amount owed under section 339.  Section 339 provides that when a

claim is rejected by the executor or administrator, or by the judge, the creditor may bring suit in

an ancillary proceeding in the probate case.

Plaintiff contends that a separate procedure governs these eight liens, which were filed

against Posey before his death.  Two of these liens—by the Orthopedic Center and Orthopedic

Pain Management—were amended in March 2009.  Under Okla. Stat. tit. 42, § 43(A),

> Every hospital in this state, which shall furnish emergency medical
> or other service to any patient injured by reason of an accident not
> covered by the Workers' Compensation Act, shall, if such injured
> party shall assert or maintain a claim against another for damages
> on account of such injuries, have a lien upon any recovery or sum
> had or collected or to be collected by such patient, or by his or her
> heirs, personal representatives or next of kin in the case of his or
> her death, whether by judgment or by settlement or compromise to
> the amount of the reasonable and necessary charges of such
> hospital for the treatment, care and maintenance of such patient in
> such hospital up to the date of payment of such damages.
> Provided, however, the lien shall be inferior to any lien or claim of
> any attorney or attorneys for handling the claim on behalf of such
> patient, his or her heirs or personal representatives; provided,
> further, that the lien herein set forth shall not be applied or
> considered valid against any claim for amounts due under the
> Workers' Compensation Act in this state.[52]

Sections 46 and 49 similarly provide for liens by physicians and ambulance service providers,

respectively.  These liens may be enforced by a civil action brought within one year after the

provider becomes aware of a final judgment, settlement or compromise of the claim asserted or

---

[52]Okla. Stat. tit. 42, § 43(A) (footnote omitted).

maintained by or on behalf of the injured person.[53]

Nine health care providers filed liens with the Tulsa County Clerk pursuant to these provisions, totaling $129,449.42. Defendant provides no authority for the proposition that the lien procedure and time limits provided therein are supplanted by the notice provisions in the probate code. Furthermore, the evidence of these liens submitted by plaintiff suggests that these would be claims based on a written contract, which would provide a five-year statute of limitations.

All of the liens referenced by plaintiff specifically invoke the procedures set forth in title 42. Indeed, they were filed prior to Posey's death. Under title 42, these providers have a lien on any recovery by Posey's personal representative in the case of his death. These providers may, if necessary, collect the amounts due from the personal representative in the case of the patient's death, and such a claim may be brought against the personal representative within one year of the judgment or settlement of this case.[54] Given these provisions, the Court finds that Posey's Estate may be liable for payment of these liens, therefore, the Court declines to find as a matter of law that these amounts are not recoverable. Summary judgment is inappropriate because a reasonable jury could award plaintiff the reasonable value of this medical treatment if it otherwise finds liability.

**2.      OHCA**

Next, defendants argue that plaintiff may not recover for medical treatment that was paid

---

[53]*Id*. §§ 44(B), 46(D), 49(D).

[54]Defendants appear to rely on a version of the applicable statutes that was amended in 2008. The version of the law discussed in *Balfour v. Nelson*, provided that the action must be brought within one year from the time of the filing of the lien; whereas the amended, controlling, version provides for the action to be brought within one year of the provider becoming aware of the final judgment, settlement, or compromise. 890 P.2d 916, 919 (Okla. 1994).

by Okahoma's Medicaid agency, OHCA. Plaintiff contends that OHCA maintains a statutory

lien against the Estate. Defendants argue that Oklahoma law does not allow for such a lien

against the Estate in a survival action. The applicable Oklahoma statute provides:

> A. 1. The payment of medical expenses by the Oklahoma Health
> Care Authority for or on behalf of or the receipt of medical
> assistance by a person who has been injured or who has suffered a
> disease as a result of the negligence or act of another person
> creates a debt to the Authority, subject to recovery by legal action
> pursuant to this section. Damages for medical costs are considered
> a priority over all other damages and should be paid by the
> tortfeasor prior to other damages being allocated or paid.
>
> . . . .
>
> D. If the injured or diseased person asserts or maintains a claim
> against another person or tortfeasor on account of the injury or
> disease, the Authority:
> 1. Shall have a lien upon payment of the medical assistance to the
> extent of the amount so paid upon that part going or belonging to
> the injured or diseased person of any recovery or sum had or
> collected or to be collected by the injured or diseased person up to
> the amount of the damages for the total medical expenses, or by
> the heirs, personal representative or next of kin in case of the death
> of the person, whether by judgment or by settlement or
> compromise. . . . [55]

The parties dispute whether the language in this statute provides for a lien by the OHCA

against the estate in a survival action, or if it requires the lawsuit to be initiated by the injured

party before death. While defendants are correct that liens "must be strictly confined within the

ambit of legislation giving them birth,"[56] it appears clear to the Court from the plain language of

the statute and the cases construing it, that a survival action, by definition, is a claim brought on

behalf of the injured party. The personal representative brought suit in this case on behalf of the

---

[55] 63 Okla. Stat. tit. 63, § 5051.1.

[56] *Kratz v. Kratz*, 905 P.2d 753, 756 (Okla. 1995).

injured party's Estate, much like a guardian brings suit on behalf of a minor.[57]  At least one

Oklahoma case applying the statute is a survival action.[58]  Moreover, the provision in subsection

(D)(1) makes clear that the legislature contemplated survival claims because it specifically

provided that the payment amount may either be collected by the injured person "or by the heirs,

personal representative or next of kin in case of the death of the person."  The Court finds that

OHCA may have a statutory lien against any payment to plaintiff of medical expenses, therefore,

summary judgment is not appropriate on this item of damages.

> **3.     Subrogation**

As part of her damages claim for medical expenses, plaintiff contends that she must also

satisfy Progressive's subrogation interest in the amount of $5000 to three of Posey's health care

providers.  In reply, defendants contend that this value was not specifically identified in the

Pretrial Order and; therefore, should not be recoverable.  Defendants further argue that this claim

was waived by Progressive because it was not included in Progressive's separate lawsuit against

these defendants, currently pending in Crawford County, Kansas District Court.

Defendants are correct that the Pretrial Order supersedes the pleadings in this matter and

controls the direction of the case.[59]  However, the Court declines to find that this damages

amount must have been specifically itemized, as it is subsumed by plaintiff's damages claim for

medical expenses.[60]  Subrogation only addresses the form of payment.  Regardless of the form of

---

[57]*See Price v. Wolford*, 608 F.3d 698 (10th Cir. 2010); *Moss v. Wittmer*, 228 P.3d 542 (Okla. App. Civ. 2009).

[58]*See Young v. Columbia S.W. Med. Ctr.*, 964 P.2d 987, 988 (Okla. App. Civ. 1998).

[59]*Franklin v. United States*, 992 F.2d 1492, 1497 (10th Cir. 2002); *see also* Fed. R. Civ. P. 16(e).

[60](Doc. 79 at 13.)

the payment, the damages themselves constitute medical expenses, which were set forth in the Pretrial Order.

Defendants argue that res judicata bars Progressive's subrogation claim, as Progressive is currently litigating its claim against defendants Old Dominion and Smith in Crawford County, Kansas District Court. That case seeks damages to Short's vehicle in the amount of $10,101.25, in addition to interest and costs. Under Kansas law, res judicata "prevents relitigation of previously litigated claims and consist of the following four elements: (1) same claim; (2) same parties; (3) claims were or could have been raised; and (4) a final judgment on the merits."[61] Defendants attach the Petition filed in the Crawford County case, which does not show that this case involves the same claims or parties. Moreover, there is no evidence that a final judgment on the merits has been achieved in that case. Accordingly, the Court denies summary judgment on this basis.

**IT IS THEREFORE ORDERED BY THE COURT** that (1) Motion for Summary Judgment filed by Protective (Doc. 70) is **granted**; (2) Motion for Summary Judgment filed by Smith (Doc. 71) is **denied**; (3) Motion for Summary Judgment filed by Old Dominion (Doc. 72) is **denied**; (4) Combined Motion for Partial Summary Judgment filed by all defendants (68) is **moot**; and (5) Second Combined Motion for Partial Summary Judgment filed by all defendants (Doc. 69) is **denied**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File a Sur-reply (Doc. 89) is **granted**.

Dated: <u>March 17, 2011</u>

<u>S/ Julie A. Robinson</u>

---

[61]*Winston v. State Dep't of Soc. & Rehab. Servs.*, 49 P.3d 1274, 1285 (Kan. 2002).

JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE