ams

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JOANNA M. COOPER, Administrator for the ESTATE OF JOHN RAMEY POSEY, Deceased,<br><br>Plaintiff,<br><br>vs.<br><br>OLD DOMINION FREIGHT LINE, INC., and VIRGEL SMITH,<br><br>Defendants. | Case No. 09-2441-JAR |

## MEMORANDUM AND ORDER

This case arises out of a motor vehicle collision that occurred in Crawford County, Kansas on January 4, 2007. John Ramey Posey was a passenger in a vehicle driven by Marilyn Short, which collided with a tractor-trailer operated by defendant Virgel Smith and owned by defendant Old Dominion Freight Line, Inc. ("Old Dominion"). Plaintiff Joanna Cooper, the duly appointed Administatrix of Posey's Estate, alleges negligence claims against defendants Smith, Old Dominion, and Protective Insurance Company ("Protective"). Plaintiff alleges that Posey suffered significant injury to his neck and lower back as a result of the collision; specifically, herniated disks at L4-5 and L5-S1 and suffered extreme lower back pain.

Before the Court are motions to exclude expert testimony concerning whether the lower back injuries sustained by Posey were caused by the collision. The Court considers plaintiff's Motion to Strike the Endorsement of Richard Harding, Ph.D. as an Expert Witness (Doc. 85) and her Amended Motion to Exclude or, in the Alternative, to Limit the Trial Testimony of Richard M. Harding (Doc. 96). In conjunction with this motion, the Court also considers defendants'

Motion for Leave to File Surreply or, in the Alternative, to Strike Materials Newly Submitted by Plaintiff (Doc. 107). The Court further considers defendants' Motion to Strike Plaintiff's Endorsement of Dr. Michael Freeman (Doc. 99), who was designated as a rebuttal expert to Dr. Harding. As discussed more fully below, the Court denies the parties' motions to exclude both expert witnesses and finds that Dr. Harding meets the reliability standards set forth in Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc*.[1]

The Court denies defendants' motion for leave to file a surreply to the motion to exclude Dr. Harding, as no surreply was attached to the motion for the Court's review.[2] Nonetheless, the Court to declines to consider new arguments raised for the first time in a reply, so this motion is also moot to the extent it asks the Court to strike new materials submitted with the reply. Plaintiff has also filed a Motion to Strike the Endorsement of Ronald Distefano, D.O. (Doc. 86); however, the Court finds that motion is moot in light of the fact that plaintiff has withdrawn her claim for burial and funeral expenses for Posey.

**I.     Richard Harding**

*A.     Standard*

The Court has broad discretion in deciding whether to admit expert testimony.[3] Fed. R. Evid. 702 provides that a witness who is qualified by knowledge, skill, experience, training or education may testify in the form of opinion or otherwise as to scientific, technical or other specialized knowledge if such testimony will assist the trier of fact to understand the evidence or

---

[1] 509 U.S. 579, 592 (1993).

[2] D. Kan. R. 15.1.

[3] *Kieffer v. Weston Land, Inc.*, 90 F.3d 1496, 1499 (10th Cir. 1996) (citation omitted).

to determine a fact in issue, "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."[4]

The proponent of expert testimony must show "a grounding in the methods and procedures of science which must be based on actual knowledge and not subjective belief or unaccepted speculation."[5] In order to determine whether an expert opinion is admissible, the court performs a two-step analysis. "[A] district court must [first] determine if the expert's proffered testimony . . . has 'a reliable basis in the knowledge and experience of his discipline.'"[6] Second, the district court must further inquire into whether the proposed testimony is sufficiently "relevant to the task at hand."[7] An expert opinion "must be based on facts which enable [him] to express a reasonably accurate conclusion as opposed to conjecture or speculation . . . absolute certainty is not required."[8] And it is not necessary to prove that the expert is "indisputably correct," but only that the "method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which satisfy Rule 702's reliability requirements."[9]

"To qualify as an expert, the witness must possess such 'knowledge, skill, experience,

---

[4] Fed. R. Evid. 702.

[5] *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 780 (10th Cir. 1999).

[6] *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 884 (10th Cir. 2005) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993)).

[7] *Id.* (quoting *Daubert*, 509 U.S. at 597).

[8] *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003).

[9] *Id.*

training or education' in the particular field as to make it appear that his or her opinion would rest on a substantial foundation and would tend to aid the trier of fact in its search for the truth."[10] *Daubert* sets forth a non-exhaustive list of four factors that the trial court may consider when conducting its inquiry under Rule 702: (1) whether the theory used can be and has been tested; (2) whether it has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) general acceptance in the scientific community.[11] In *Kumho Tire*, however, the Supreme Court emphasized that these four factors are not a "definitive checklist or test" and that a court's gatekeeping inquiry into reliability must be "tied to the facts of a particular case."[12]

It is within the discretion of the trial court to determine how to perform its gatekeeping function under *Daubert*.[13] The most common method for fulfilling this function is a *Daubert* hearing, although such a process is not specifically mandated.[14] In this case, the parties have not requested a hearing on this motion. The Court has carefully reviewed the exhibits filed with the motions, which include deposition testimony from Dr. Harding, and believes this review is sufficient to render a decision without conducting an oral hearing.

*B.*     *Discussion*

On October 24, 2010, defendants endorsed Richard Harding, Ph.D, as a retained expert in

---

[10]*Farmland Mut. Ins. Co. v. AGCO Corp.*, 531 F. Supp. 2d 1301, 1304 (D. Kan. 2008) (citing *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004)).

[11]*Daubert*, 509 U.S. at 593–94.

[12]*Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) (internal quotations omitted).

[13]*Goebel v. Denver & Rio Grande W. R.R.*, 215 F.3d 1083, 1087 (10th Cir. 2000).

[14]*Id.*

biomechanics and occupant kinematics. Dr. Harding is a consultant who serves as the president and CEO of Biodynamic Research Corporation ("BRC"), a consulting company that assists clients in understanding the nature and cause of injuries in untoward events. Specifically, Dr. Harding consults in the areas of vehicle dynamics (impact analysis), occupant kinematics, biomechanics, injury potential, and medical validation: a combined process termed Injury Causation Analysis ("ICA"). Dr. Harding has been associated with BRC since 1995 and approximately eighty percent of his work involves matters in litigation, primarily general negligence and product liability cases.

In this case, Dr. Harding applied the ICA process in determining that Posey did not suffer permanent injuries as a result of the collision. ICA is a three-stage analysis that examines a "collision event in order to understand its nature and determine its essential features, including the causation of injuries."[15] The first stage is called "the past impact analysis," which involves analyzing the motion of the vehicles as they interact. The second stage is a review of the response of the individual to the crash. The last stage of the ICA analysis examines the likelihood of injury to the person because of their response to the crash. In this last stage, Dr. Harding testified that he looks at what the incident has produced in terms of acceleration. Dr. Harding applied ICA in reaching the following opinions at issue in this motion:

> Mr Posey's kinematic response to this event would have been mild to moderate, and would have consisted of movement toward the to move towards [sic] the PDOF, to the extent allowed in his restrained state. As a consequence of the motion to his rear and left, and of his reflex reaction to the event, Mr Posey could have sustained strains of his paravertebral musculature. No other injury causation mechanism was apparent in this collision.

---

[15](Doc. 103, Ex. A , attach. c at 1.)

> . . . .
>
> > Thus, as a consequence of his involvement in the January 4, 2007, motor vehicle incident, it is my opinion that, to a reasonable biomechanical and medical probability, Mr Posey could have sustained a mild to moderate acute transient strain of his paracervical and paralumbar musculature. This soft tissue injury would resolve, without sequelae, within days of the event. Mr Posey's prolonged post-incident clinical course of, particularly, low back and lower extremity symptomatology was inconsistent with the injury causation potential of this event during which no part of his body would be permanently injured.
> >
> > These conclusions are further supported by Mr Posey's contemporaneous medical record which reveals that low back symptoms were first reported by him 18 days after the event, which hiatus is an inconsistency with the medical tenet that timing of an injury be coincident with the presence of a mechanism by which that injury could occur.
> >
> > Finally, any attribution by his physicians (including Drs Bewley, Murta, Anagnost, and Bernard) of Mr Posey's side on collision as the cause of the multiple pathologies diagnosed in his low back, on the basis of history and physical examination alone, is a *post hoc ergo propter hoc* fallacy of logic, and has no scientific basis or merit whatsoever.[16]

In reaching this opinion, Dr. Harding accessed information about Posey's collision, including diagrams of the accident site reconstruction, Posey's medical records, and information provided to him by Jay Pfeiffer, the accident reconstruction expert retained by defendants in this matter.

### 1. Motion for Additional Time to File and Motion for Leave to File Surreply

Plaintiff initially filed her motion to exclude on the basis that defendants had not made Dr. Harding available for deposition prior to the December 9, 2010 deadline for filing motions to exclude expert witnesses. She asked the Court to either strike Dr. Harding or extend the deadline

---

[16](Expert Rpt., Doc. 103, Ex. A , attach. a at 8–9.)

for plaintiff to file her motion until after the deposition. Subsequent to filing that motion, plaintiff deposed Dr. Harding on December 30, 2010. To the extent plaintiff's initial motion seeks additional time to file her motion to strike or exclude under Rule 702 and *Daubert*, the motion is granted. That initial motion is otherwise moot.

Plaintiff's amended motion was filed on January 19, 2011 and challenges Dr. Harding's qualifications and the reliability of his testimony based on the proffered opinion set forth in his expert report and the December 30 deposition. For the first time in her reply, plaintiff challenges the relevance of Dr. Harding's testimony, pointing the Court to decisions in other courts where his testimony was limited or excluded. Defendants ask the Court to strike the cases attached to plaintiff's reply brief on this point or to allow them the opportunity to file a surreply. The Court denies the motion for leave to file a surreply, as defendants failed to attach a proposed surreply to their motion. However, the Court finds this motion is moot because the Court declines to consider arguments raised for the first time in the reply. While defendants, as the proponents of Dr. Harding's testimony, have the burden to show that his testimony is relevant, plaintiff failed to challenge this aspect of his testimony until the reply; therefore, those arguments will not be considered.[17]

### 2. Qualifications

Plaintiff first argues that Dr. Harding is not qualified to render an opinion about the cause of injury on the basis of any principle of biomechanical or physics. Plaintiff argues that Dr.

---

[17]Even if the Court did consider plaintiff's contention that Dr. Harding's testimony should be excluded in based on findings in other courts, it would reach the same result. Results in other cases do not dictate the Court's findings in its role as gatekeeper in this case. Moreover, defendants' reference to the quantity of trials Dr. Harding participated in is not in an effort to "bolster his credibility" as plaintiff suggests, but in order to show his qualifications. The Court finds, based on the evidence presented in this case on this motion, Dr. Harding's testimony meets the qualification, relevance, and reliability requirements to be admissible.

Harding did not obtain a degree in biomechanics or physics and that his experience does not include the study of magnitude and direction of forces at play in a "side-on plus" collision such as the collision in which Posey was involved. Based on Dr. Harding's curriculum vitae and summary of experience submitted with defendants' response, along with his deposition testimony, the Court is satisfied that he is qualified as an expert by knowledge, skill, training, or education, as required by Fed. R. Civ. P. 702. Dr. Harding trained in academic and clinical instruction in neurology, orthopedics, neurological surgery, and radiology. Further, Dr. Harding has a background in the academic fields of biology, chemistry, and physics. Dr. Harding studied biomechanics in medical school, as well as in obtaining his post-graduate degree in aviation. These fields of study and practice qualify Dr. Harding in the performance of injury causation analyses. Dr. Harding has also undertaken specific academic training in Traffic Accident Reconstruction. Further, Dr. Harding underwent post-graduate training in aerospace medicine, which included a doctoral thesis in human physiology. Such training consolidated and built upon his expertise and experience in biomechanics, especially human tolerance to and protections from applied forces, including those associated with helmets, restraint systems, ejection seats, and impacts. Dr. Harding also has presented and published in the field of ICA. Plaintiff's objections to Dr. Harding's specific experience with the type of collision involved in this case goes to the weight and not the admissibility of his testimony.

### 3. Relevance

The Court also finds that Dr. Harding's proffered testimony is highly relevant. In order to prove her negligence claim, plaintiff must show that the collision caused the alleged damages. The parties agree that causation of Posey's injuries will be a key issue at trial. Dr. Harding's

opinion goes to the issue of causation and damages; therefore, it will likely assist the trier of fact in determining these elements of plaintiff's claim.

### 4. Reliability

The crux of plaintiff's motion to strike challenges the reliability of Dr. Harding's testimony. Plaintiff argues that Dr. Harding ignored or otherwise improperly applied information known or made available to him, ignored or misapplied ICA, and failed to support his opinion with scientific literature, test, or analysis.

#### a. Information Regarding Posey's Position and Direction of Force

Plaintiff first points to the following statement by Dr. Harding during his deposition, claiming that he ignored important information in applying ICA: "I was really uninterested in the effect of the crash on the occupants inside."[18] But the errata sheet completed by Dr. Harding on January 28, 2011, after plaintiff filed her motion, states that this statement is a transcription error and the word "uninterested" should be "interested." The Court notes that the context of Dr. Harding's statement supports the correction noted on his errata sheet.

Plaintiff next points to information about Posey's physical condition at the time of the collision that she claims Dr. Harding did not consider when rendering his opinion based on ICA. Plaintiff argues that Dr. Harding did not consider Posey's posture, head location, and what activities he was engaged in at the moment of impact. Dr. Harding did testify however, that he knew Posey's body was positioned in a sitting position as the restrained passenger in the right, rear seat of the third row of the vehicle in which he was riding at the time of the collision.[19]

---

[18](Doc. 97, Ex. 2 at 36:11–12.)

[19]*Id.* at 44: 2–6; 48:2-8.

Moreover, Dr. Harding testified that when he performs a general impact analysis of a collision, he must first and foremost know the principal direction of force ("PDOF"). In the present case, Dr. Harding determined that the PDOF initially came from the rear and moved from the 6 to 7 o'clock position to the 8 to 9 o'clock position as the vehicle rotated to the front of the tractor-trailer. In light of the determination of the PDOF and the known position of Posey's body, Dr. Harding determined that "Posey could have sustained strains of his paravertebral musculature. No other injury causation mechanism was apparent in this collision." The Court finds that Dr. Harding based his opinion on reliable facts about Posey's position at the time of the collision—where he was sitting and the fact that he was restrained. To the extent plaintiff contends there are other facts relevant to the ICA process that Dr. Harding failed to consider in evaluating Posey's position, it goes to the weight and not the admissibility of the evidence.

Dr. Harding also testified that when performing an impact analysis he is "interested" in the posture, age, sex, health, and "the direction the head is pointed in some cases." Plaintiff indicts Dr. Harding's opinion because he admitted during his deposition that these factors were not known for sure in Posey's case. However, Dr. Harding did testify that he knew Posey's position in the vehicle, and his sex, age, height, and weight. Furthermore, Dr. Harding knew some of Posey's medical history based on the post-collision medical reports.[20] To the extent plaintiff contends there are other relevant facts that Dr. Harding failed to consider in evaluating Posey's condition at the time of the collision, it goes to the weight and not the admissibility of the evidence.

Finally, plaintiff suggests that the angle of the collision is important in determining

---

[20]*Id.* at 62:3–63:6.

Posey's injuries and that Dr. Harding admitted that he was not aware of the angle.[21] But defendant argues that angle is not the determining factor in predicting injury under the ICA process. The PDOF is the most important factor, and Dr. Harding was able to determine that information and use it in rendering his opinion. To the extent plaintiff contends that the angle is important in determining potential injury, this is an appropriate subject of cross-examination but does not go to the admissibility of the opinion.

      **b.**      **Information Regarding Posey's Symptoms of Back Pain Post-Collision**

Plaintiff argues that Dr. Harding's opinion is not reliable because he ignored Posey's low back pain prior to the collision. Furthermore, plaintiff argues that Dr. Harding mistakenly contended that Posey's complaints of lower back pain did not begin until January 22, 2007, weeks after the collision. Plaintiff claims that Dr. Harding ignored medical record evidence suggesting that plaintiff complained about low back pain immediately after the collision, evidence that should have informed the ICA. Defendant responds that Dr. Harding had some knowledge about Posey's medical condition that day—that he was able to get in and out of the vehicle, and that he was able to walk—and that his opinion that the PDOF did not cause permanent lower back injuries primarily relies upon his conclusion that there were no vertical accelerations applied to the spine that were of a magnitude capable of causing disc herniation. In order to cause the claimed damages, Dr. Harding opines that the collision must have involved twisting and lower compression of the spine.[22] Dr. Harding's opinion is based on reliable facts

---

[21]*Id.* at 36:7-12.

[22]*Id.* at 92:2–93:12.

and a testable scientific process,[23] and plaintiff's claims that he ignored Posey's pre-collision medical condition goes to the weight and not the admissibility of Dr. Harding's opinion.

Whether Posey suffered lower back injury or pain immediately after the collision is hotly contested by the parties. Dr. Harding and defendants maintain that Posey did not report lower back pain until January 22, 2007, while plaintiff maintains that the medical records belie this contention. The parties point to many of the same medical records in support of their respective positions. The Court determines this is a question for the jury. Plaintiff may cross-examine Dr. Harding on the medical records at issue and argue why they show Posey suffered from immediate lower back pain. Plaintiff may also call Posey's treating physicians and her rebuttal expert in support of her position. Likewise, defendants may argue why the records support their position, bolstering Dr. Harding's opinion that any references in the medical records to back pain prior to January 22, 2007 are not reliable.

### c. Scientific Literature

Finally, plaintiff argues that Dr. Harding's opinion is not reliable because it is not supported by a particular scientific study. Plaintiff further contends that Dr. Harding's references to a study by King is misplaced. Defendants respond that Dr. Harding's opinions are properly supported and should not be excluded merely because there is not a study that exactly replicates the circumstances of the collision in this case.

In reaching his opinion, Dr. Harding applied ICA to the circumstances of Posey's collision. The Court has reviewed Enclosure C to Dr. Harding's affidavit, "The Principles and

---

[23]Plaintiff explicitly disclaims any objection to the ICA process in her motion to strike (Doc. 97 at 18.)

Methodology of Injury Causation Analysis,"[24] which supports the finding that ICA is a recognized step-wise process that is accepted by the relevant scientific community. Plaintiff contends that Dr. Harding's opinion should be excluded because he is not aware of any study about whether an "acute injury to the disk can occur in a side-on collision involving a Delta-V of 16.7 miles per hour." Dr. Harding did reference a study by a Professor King, reviewing cases about how lumbar discs are herniated in a collision. Plaintiff replies that this study does not support Dr. Harding's opinion because it does not discuss the potential for permanent injury to the lumbar disc in a collision similar to the one suffered by Posey. But the Court declines to exclude Dr. Harding's testimony on this basis. First, there is no requirement that his opinion be substantiated by a study that is identical in circumstance to the collision in this case. Dr. Harding has sufficiently established that his conclusion is grounded in the ICA methodology, which is easily testable, and accepted by the scientific community. Second, Dr. Harding explained during his deposition that while there is no study that finds a person cannot suffer an acute injury to the lower back such as Posey's injury, it is unlikely. He admitted that the King studies would not mirror the collision at issue in this case and he testified that he was not aware of any study that demonstrates that a person involved in a collision can suffer acute injury to the discs in the back. This issue goes to the weight and not the admissibility of the opinion; plaintiff may cross-examine Dr. Harding about these issues at trial.

All of the issues raised by plaintiff in her motion to exclude Dr. Harding's testimony go to the weight and not the admissibility of his expert opinion. Plaintiff may cross-examine Dr. Harding on all of these issue and/or elicit rebuttal opinion evidence, as described more fully in

---

[24](Doc. 103, Ex. A, attach. c.)

the next section.

## II. Michael Freeman

Plaintiff endorsed Dr. Michael Freeman as a rebuttal expert on January 20, 2011, approximately two months after the deadline passed for rebuttal witness disclosures.[25] Defendants move to strike Dr. Freeman's testimony because the disclosure was untimely. Defendants initially move to exclude because the late disclosure was not substantially justified under Fed. R. Civ. P. 37; however, in the reply, defendants add that the late disclosure should be excluded because plaintiff fails to show good cause under Fed. R. Civ. P. 16 for her failure to comply with the Scheduling Order deadline. The Court does not apply the good cause standard to this motion as plaintiff has not filed a motion to modify the scheduling order. Instead, this motion is properly considered under Rule 37(c)(1).

Rule 26(a)(2) governs disclosure of expert testimony. Expert disclosures must be made "at the times and in the sequence that the court orders."[26] In this case, plaintiff's rebuttal expert disclosures were due twenty days after service of the defendants' reports.

Rule 37(c)(1) provides:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Whether a violation of Rule 26(a) is "substantially justified" or "harmless" is left to the broad

---

[25] The Scheduling Order provided a deadline of twenty days after disclosure of Dr. Harding on October 24, 2010; therefore, the rebuttal disclosure was due on November 15, 2010.

[26] Fed. R. Civ. P. 26(a)(2)(D).

14

discretion of the Court.[27] The following factors guide this discretion: "'(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness.'"[28]

Plaintiff disclosed Dr. Freeman approximately two months after the deadline for doing so set forth in the Scheduling Order passed and did not seek prior leave of Court to file the untimely disclosure. Plaintiff maintains in her response, that counsel immediately requested dates for Dr. Harding's disclosure after receiving the designation. She maintains that she wanted the opportunity to depose Dr. Harding before "making the decision and financial commitment to retain an individual to specifically counter Harding's testimony." Defendants did not respond to plaintiff's October 29 request for deposition until November 18, three days after the rebuttal disclosure deadline passed. By the motion to exclude deadline on December 9, 2010, counsel had not secured a deposition date for Dr. Harding, prompting plaintiff's motion to exclude Dr. Harding on that basis, or in the alternative, extend the deadline for her to file a motion to exclude until after his deposition could be taken. This deposition took place on December 30, 2010 and plaintiff filed her amended motion to exclude his testimony on January 19, 2011. The next day, plaintiff disclosed Dr. Freeman as a rebuttal witness.

Under the unique circumstances of this case, the Court finds that plaintiff's violation of Rule 26(a), disclosing a rebuttal expert outside of the deadline provided in the Scheduling Order, was substantially justified. While defendants suffer some prejudice by virtue of the late date of

---

[27]*See, e.g.*, *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 953 (10th Cir. 2002) (quoting *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999)).

[28]*Id.* (quoting *Woodworker's Supply, Inc.*, 170 F.3d at 993).

the disclosure, the prejudice is minimized by the fact that it was disclosed more than three months before trial and that the parties did not rely on these expert reports in their dispositive motions. Given that Dr. Freeman is merely a rebuttal witness, defendants should be familiar with the subject matter of his testimony and have plenty of time to prepare Dr. Harding for this rebuttal. There would be no disruption to the trial in this matter, as this is not an instance where an expert has been designated on the eve of trial, or after trial has already begun. Finally, the Court finds no evidence of bad faith or willfulness in the late disclosure. It is clear to the Court that the delay is a direct result of the delay in deposing Dr. Harding. Accordingly, the Court declines to strike Dr. Freeman's testimony as untimely.

**IT IS THEREFORE ORDERED BY THE COURT** that plaintiff's Motion to Strike the Endorsement of Richard Harding, Ph.D. as an Expert Witness (Doc. 85) is **granted in part and denied in part**. The motion is granted to the extent she requests additional time to file a motion to exclude Dr. Harding's testimony, it is otherwise denied as moot. Plaintiff's Amended Motion to Exclude or, in the Alternative, to Limit the Trial Testimony of Richard M. Harding (Doc. 96) is **denied**. Defendants' Motion for Leave to File Surreply or, in the Alternative, to Strike Materials Newly Submitted by Plaintiff (Doc. 107) is **denied**.

**IT IS FURTHER ORDERED BY THE COURT** that defendants' Motion to Strike Plaintiff's Endorsement of Dr. Michael Freeman (Doc. 99) is **denied**.

**IT IS FURTHER ORDERED BY THE COURT** that plaintiff's Motion to Strike the Endorsement of Ronald Distefano, D.O. (Doc. 86) is **denied as moot**.

Dated: April 6, 2011

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGEr